IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Sonya Coley, Ebony Hall, Sonya Johnson, | § | |
| Mossa Jones, Ruth Richardson, Salika | § | |
| Taylor, Elizabeth Wright, Thomas Pope, | § | |
| Plaintiffs. | § | |
| | § | Civil Action No. 12-cv-5565 |
| v. | § | (Chen, J)(Reyes, M.J.) |
| | § | |
| | § | |
| VANNGUARD URBAN IMPROVEMENT | § | **JURY TRIAL DEMANDED** |
| ASSOCIATION, INC., Thomas C. | § | |
| Hansard, Jr., Individually & | § | |
| as Chairman of the Board of Directors, | § | |
| Arthur H. Niles, Executive Director/General | § | |
| Manager of Vannguard Urban Improvement | § | |
| Association, Inc., Vannguard Local | § | |
| Development Corp., Inc., 1686 Gates | § | |
| General Partners Corp., Malcolm 1677 | § | |
| General Partners Corp., 1659 Hancock | § | |
| General Partners Corp., 1661 Macon | § | |
| General Partners Corp., | § | |
| Defendants. | § | |

**THIRD AMENDED COMPLAINT (CORRECTED)
WITH LEAVE OF COURT**

Plaintiffs, Sonya Coley, Ebony Hall, Sonya Johnson, Mossa Jones, Ruth Richardson,

Salika Taylor, Elizabeth Wright and Thomas Pope, by and through their counsel, Irene Donna

Thomas, Esq., and for their Complaint against the above-named defendants, say as follows:  This

is an action to recover damages for willful violations of the Fair Labor Standards Act (FLSA) and

the New York Labor Law for unlawful wage theft, including but not limited to requiring the

plaintiffs to perform off-the-clock work resulting in unpaid straight and overtime pay, delaying

the issuance of paychecks beyond the plaintiffs' regular pay date that had been designated in advance, misclassifying the plaintiffs as salary employees, failing to pay earned vacation pay, retaliatory discharge; and to recover, *inter alia*, unpaid wages, liquidated damages, emotional distress and punitive damages (for the retaliatory discharge), an amount to recover for damages under the notice provisions of the New York State Wage Theft Prevention Act, pre- and post-judgment interest, attorney's fees and costs under these statutes.

## JURISDICTION

1.   This Court has jurisdiction under 28 U.S.C. § 1331 because this action is brought under 28 U.S.C. §§ 201 *et seq.*  This court also has pendent jurisdiction for an action under New York Labor Law, § 190 *et seq.,* including but not limited to, Article 6 (payment of wages) and Article 19 (minimum wage act).

2.   Venue is proper in this District because the defendants conducted business in this District and all of the events alleged in this Complaint occurred in this District.

## THE PARTIES

3.   The plaintiffs are all residents of Kings County, Brooklyn, New York.

4.   Defendant Vannguard Urban Improvement Association, Inc. (**hereafter referred to as defendant Vannguard),** is a not-for-profit corporation, duly licensed and organized under the laws of the State of New York.  During all relevant times, defendant Vannguard had its principal office and place of business at 1475 Fulton Street, Brooklyn, New York.

5.   Employees of defendant Vannguard Urban Improvement Association, Inc., and/or its subsidiaries have handled and used and worked with goods that have been moved in or produced in interstate commerce, and that its annual gross volume of business was not less than $500,000

(exclusive of excise taxes at the retail level).

6.   At all relevant times, defendant Vannguard Urban Improvement Associations'
activities, and those of its subsidiaries (also defendants), were related to each other and
performed through contracts with the City of New York for common business purposes of
providing services to the targeted population of disadvantaged teens and young adults in
Brooklyn, New York and by engaging in community development projects.  Defendant
Vannguard provided services and engaged in community development projects through rent and
other income received by its subsidiaries, defendant Vannguard Urban Improvement Association,
Inc., defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners
Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General
Partners Corp., and defendant 1661 Macon General Partners Corp.

7.   Defendant Thomas C. Hansard, Jr., has been a member of the Board of Directors since
approximately 2007.  On or about February 14, 2012, he was elevated to the position of
Chairman of the Board of Directors.

8.   A member of the Board of Directors, defendant Hansard has been an "employer"
within the meaning of the Fair Labor Standards Act and N.Y. Lab. L.  As a member of the Board
of Directors, defendant Hansard was responsible to manage the affairs of defendant Vannguard,
including, but not limited to, making decisions concerning employee wages and payment of
employee wages.

9.   Between November 9, 2006 and February 14, 2012, Defendant Arthur H. Niles, served
as Executive Director of defendant Vannguard.  On February 14, 2012, his title changed to
"General Manager."

10.   As Executive Director and General Manager, defendant Niles possessed the power to control the plaintiffs. He was authorized to hire, fire, discipline, assign employees, set work schedules, determine the rate and method of wage payments, establish classification of employees and maintain employment records.

11.   Defendant Vannguard Local Development Corporation, Inc., is a subsidiary of defendant Vannguard Urban Improvement Association, Inc.  At all relevant times, its principal office and place of business was at the offices of defendant Vannguard Urban Improvement Association, Inc., 1475 Fulton Street, Brooklyn, New York.  Defendant Vannguard Local Development Corporation, Inc. was organized for the purpose of supporting the parent corporation, Vannguard Urban Improvement Association, Inc., with its mission of providing services to the community.

12.   Defendant 1686 Gates General Partners Corp., is a subsidiary of defendant Vannguard Urban Improvement Association, Inc. having its principal executive offices at the offices of defendant Vannguard Urban Improvement Association, Inc.  Defendant 1686 Gates General Partners Corp. was organized for the purpose of supporting the parent corporation, defendant Vannguard Urban Improvement Association, Inc., with its mission of providing services to the community by providing housing and services.

13.   Defendant Malcolm 1677 General Partners Corp., is a subsidiary of defendant Vannguard Urban Improvement Association, Inc. having its principal executive offices at the offices of defendant Vannguard Urban Improvement Association, Inc.  Defendant Malcolm 1677 General Partners Corp, was organized for the purpose of supporting the parent corporation, defendant Vannguard Urban Improvement Association, Inc., with its mission of providing

4

services to the community by providing housing and services.

14.  Defendant 1659 Hancock General Partners Corp is a subsidiary of defendant Vannguard Urban Improvement Association, Inc. having its principal executive offices at the offices of defendant Vannguard Urban Improvement Association, Inc.  Defendant 1659 Hancock General Partners Corp. was organized for the purpose of supporting the parent corporation, defendant Vannguard Urban Improvement Association, Inc., with its mission of providing services to the community by providing housing and services.

15.   Defendant 1661 Macon General Partners Corp., is a subsidiary of defendant Vannguard Urban Improvement Association, Inc. having its principal executive offices at the offices of defendant Vannguard Urban Improvement Association, Inc.  Defendant 1661 General Partners Corp. was organized for the purpose of supporting the parent corporation, defendant Vannguard Urban Improvement Association, Inc., with its mission of providing services to the community by providing housing and services.

16.  Defendant Arthur H. Niles served/serves, simultaneously, as Executive Director of defendant Vannguard Urban Improvement Association, Inc., defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp.

17.  Members of the Board of Directors for defendant Vannguard Urban Improvement Association considered and resolved issues concerning its subsidiaries, defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant

1661 Macon General Partners Corp.

18.  Income from defendant Vannguard Urban Improvement Association subsidiaries, defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp., was used to financially support defendant Vannguard Urban Improvement Association.

19.  Merril Lynch Wealth Management Accounts for defendant Vannguard Urban Improvement Association included its subsidiaries, i.e., "Vannguard Urban Impv. Assoc., FAO 1686 Gates LP, Attn" Arthur Niles," "Vanguard Urban Impr. Assoc., FAO Malcolm 1677, Attn: Arthur Niles," "Vanguard Urban Impv. Assoc., FAO 1659 Hancock LP, Attn: Arthur Niles," and "Vannguard Urban Impv. Assoc., FAO 1661 Macon LP, Attn: Arthur Niles."

20.  The corporate defendants have common central offices at a single location.

21.  Services of the Executive Director, secretarial and tenant services are performed by employees of defendant Vannguard Urban Improvement Association, Inc.  These employees received a paycheck from defendant Vannguard Urban Improvement Association, Inc., however, they performed work on behalf of the subsidiaries.  At various times during the relevant period, defendant Niles utilized maintenance employees serving tenants to observe and report on attendance activities of defendant Vannguard Urban Improvement Association employees.

22.  Income received by the subsidiaries are utilized by defendant Vannguard Urban Improvement Association, Inc. for employee payroll purposes and for providing services as part of its mission.

23.  Defendant Vannguard Urban Improvement Association subsidiaries, defendant

Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp., constitute a single enterprise under the FLSA. and .

24.  During all relevant periods, defendant Niles, Hansard, Vannguard Urban Improvement Association, Inc., defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp., were **joint** employers of the plaintiffs within the meaning of the FLSA and within the meaning of the N.Y. Lab. L. where they act(ed) directly or indirectly in the interest of the other employer (or employers) in relation to the plaintiffs.  They are, therefore, jointly and severally liable for plaintiffs' injuries.

25.  During all relevant periods, defendant Vannguard Urban Improvement Association, Inc., defendant Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp., were engaged in related activities, had a unified operation or common control and a common business purpose.

## COMMON FACTUAL ALLEGATIONS

26.  Defendant Vannguard is engaged in the business of career vocational counseling, job skills training and preparation for economically disadvantaged teens and young adults.

27.  Defendant Vannguard's management, as a non-profit corporation, resides in the Board of Directors.

28.  As stated more specifically below, defendant Vannguard hired the plaintiffs as employees at various times on a salary basis.

29.  The plaintiffs' job duties were an integral part of defendants' business.

30.  Throughout their employment, the defendants knew or should have known that plaintiffs were performing uncompensated work due to the plaintiffs' repeated complaints concerning their wages, memorandums received from Vannguard's Comptroller and due to memorandums/letters authored by defendant Niles concerning Vannguard's inability to meet payroll obligations.

31.  Consistent with defendant Vannguard's written policies and procedures, defendant Niles repeatedly instructed plaintiffs that when submitting bi-weekly time sheets at the end of each pay period, they were not permitted to include hours worked in excess of 35 each week.

32.  The plaintiffs' employment with defendant Vannguard was not pursuant to an employment contract.

33.  Throughout their employment, defendants exercised control over the terms and conditions of plaintiffs' employment.

34.  Defendant Vannguard's "Personnel Policies and Procedures," provide, *inter alia,* that:

    a.    full-time employees, like the plaintiffs herein, regularly work thirty-five (35) or more hours per week;

    b.    Vannguard's work hours were from 9:00 a.m. to 5:00 p.m., with an hour for lunch;

    c.    full-time employees are entitled to vacation pay, which is accrued at the

rate of one and one-quarter (1-1/4) days per month.  All regular, full-time employees start accruing vacation pay from the date of employment;

d.      administrative employees, defined by the Policies and Procedures, as one whose salary is $12,000 or above, "shall <u>not</u> be deemed as having worked overtime.  All "overtime" by administrative employees shall be considered donated time.

e.      when full-time, regular employees worked less than seven (7) hours each day, they are required to record their time as leave without pay, annual, sick leave or compensatory time.

f.      all regular employees must account for seven (7) hours per day during the normal work week regardless of any overtime which may be incurred.

g.      employees, *other than secretaries and administrative staff*, when working over seven (7) hours per day, were required to record their time as compensatory time.

h.      payday arrives at defendant Vannguard every other Thursday.  Paychecks are to cover all the days preceding and including the previous Friday.

i.      regular employees (such as the plaintiffs) accrued paid sick leave from the date of their employment at the rate of one (1) sick day per month.

35.  During the relevant period, defendant Vannguard covered the plaintiffs with health insurance and a 403(b) retirement plan.

36.  During the relevant period, Defendant Vannguard withheld taxes from the plaintiffs' paychecks and was responsible to contribute various taxes for their employees.

9

37.   During the relevant period, defendant Vannguard issued plaintiffs' an IRS Forms W-2 and W-4 as they were classified as employees.

38.   During the relevant period, the plaintiffs worked in excess of 40 hours each week on a regular and repeated basis.

39.   Defendants did not pay plaintiffs straight time for hours worked in excess of thirty-five in each work week, and did not pay plaintiffs one and one-half times their regular rate of pay for hours worked over forty hours during a work week.  Instead, the defendants misclassified the plaintiffs as salary employees.

40.   During the relevant period, Defendant Vannguard was responsible for providing the instrumentalities by which the work was to be done including, but not limited to, computers, office equipment, and office supplies.

41.   During the relevant period, the defendants instructed plaintiffs as to their work locations and tasks to perform.  The plaintiffs worked at the defendants' instruction.

42.   During all relevant periods, defendant Vannguard repeatedly delayed issuance of paychecks to the plaintiffs beyond their regular pay date for work performed for a minimum of fifty (50) pay periods as indicated below.

43.   For year 2010, defendant Vannguard delayed issuance of paychecks for the following pay periods:

| Begin of Pay Period | End of Pay Period |
|---|---|
| 4/26/2010 | 5/7/2010 |
| 5/10/2010 | 5/21/2010 |
| 5/24/2010 | 6/4/2010 |
| 7/19/2010 | 7/30/2010 |
| 10/25/2010 | 11/5/2010 |

10

|  |  |
|---|---|
| 11/8/2010 | 11/19/2010 |
| 11/22/2010 | 12/3/2010 |
| 12/6/2010 | 12/17/2010 |

44.  For year 2011, defendant Vannguard delayed issuance of paychecks for the following

pay periods:

| Begin of Pay Period | End of Pay Period |
|---|---|
| 1/17/2011 | 1/28/2011 |
| 3/14/2011 | 3/25/2011 |
| 3/28/2011 | 4/8/2011 |
| 4/11/2011 | 4/22/2011 |
| 4/25/2011 | 5/6/2011 |
| 5/9/2011 | 5/20/2011 |
| 5/23/2011 | 6/3/2011 |
| 6/6/2011 | 6/17/2011 |
| 6/20/2011 | 7/1/2011 |
| 7/4/2011 | 7/15/2011 |
| 7/18/2011 | 7/29/2011 |
| 8/1/2011 | 8/12/2011 |
| 8/15/2011 | 8/26/2011 |
| 8/29/2011 | 9/9/2011 |
| 9/12/2011 | 9/23/2011 |
| 9/26/2011 | 10/7/2011 |
| 10/10/2011 | 10/21/2011 |
| 10/24/2011 | 11/4/2011 |
| 11/7/2011 | 11/18/2011 |
| 11/21/2011 | 12/2/2011 |
| 12/5/2011 | 12/16/2011 |
| 12/19/2011 | 12/30/2011 |

45.  For year 2012, defendant Vannguard delayed issuance of paychecks for the following

pay periods:

| Begin of Pay Period | End of Pay Period |
|---|---|
| 1/2/2012 | 1/13/2012 |
| 1/16/2012 | 1/27/2012 |
| 1/30/2012 | 2/10/2012 |
| 2/13/2012 | 2/14/2012 |

| | |
|---|---|
| 2/27/2012 | 3/9/2012 |
| 3/12/2012 | 3/23/2012 |
| 3/26/2012 | 4/6/2012 |
| 4/9/2012 | 4/20/2012 |
| 4/23/2012 | 5/4/2012 |
| 5/7/2012 | 5/18/2012 |
| 5/21/2012 | 6/1/2012 |
| 6/4/2012 | 6/15/2012 |
| 6/16/2012 | 6/29/2012 |
| 7/2/2012 | 7/13/2012 |
| 7/16/2012 | 7/27/2012 |
| 7/30/2012 | 8/10/2012 |
| 8/13/2012 | 8/24/2012 |
| 8/27/2012 | 9/7/2012 |
| 9/10/2012 | 9/21/2012 |
| 10/22/2012 | 11/2/2012 |

46.   The defendants were aware that the plaintiffs were not paid their wages at least twice each month on their regular pay day that had been designated in advance.

47.   The plaintiffs are entitled to liquidated damages for each pay period that paychecks were delayed.

48.   Due to the frequent delayed wage payments, plaintiffs were unable to meet their financial obligations and accrued interest and penalties on those obligations.

49.   Throughout their employment, plaintiffs Sonya Coley and Mossa Jones repeatedly complained, to no avail, to defendant Hansard, defendant Niles, and other members of the Board of Directors, about the delayed issuance of paychecks and the resulting heavy financial burdens upon them.

50.   Defendant Niles authored letters on behalf of plaintiffs Ruth Richardson, Elizabeth Wright, Salika Taylor, and Sonya Coley, informing "To Whom It May Concern," that defendant Vannguard had been unable to meet payroll obligations and these plaintiffs "may be presently

12

delinquent in their account with you. I assure you this is through no fault of [her] own."

51. Despite the complaints of Ms. Coley and Mr. Jones, the defendants did nothing to rectify the delayed issuance of paychecks beyond their regular pay day.

52. For the 12 week period before August 7, 2012, Vannguard had not paid the plaintiffs wages earned on their regular pay days. The plaintiffs, among others, requested a meeting with the Board of Directors to discuss the issue.

53. By letter dated August 3, 2012, defendant Arthur H. Niles, scheduled a meeting of the Board of Directors and staff for Tuesday, August 7, 2012 at 5:00 p.m. He informed plaintiff Coley and other staff members, including the plaintiffs, that this meeting will grant them an opportunity to ask any questions they may have about Vannguard's status.

54. The August 7, 2012 meeting began at 6:45 p.m. Present, among others, were defendant Hansard, defendant Niles, Vannguard's attorney, Andre Ramon Soleil, plaintiffs Coley, Sonya Johnson, Salika Taylor, Ruth Richardson, Ebony Hall, Thomas Pope, Mossa Jones and Elizabeth Wright.

55. During the meeting, attorney Soleil announced that Vannguard was in the process of selling its real estate and that the staff would be receiving "a nice settlement package for Christmas."

56. The plaintiffs did not receive a "nice settlement package" for Christmas as promised.

57. Plaintiffs informed Board members of the burdens they suffered due to defendant Vannguard's repeated failure to pay their wages during the most recent 12-week period. Plaintiffs asked the Board members when they would be paid. After going into "Executive Mode," Board members held a private discussion. About 30 minutes later, Soleil informed the

staff that they would receive a check by Friday, August 10, 2012.  Soleil and defendant Hansard informed plaintiff Coley and other plaintiffs that, within a few weeks, a follow-up meeting would be held.

58.  On August 10, 2012, defendant Vannguard did not pay the plaintiffs their wages due.

59.  On August 31, 2012, Ms. Coley wrote a memorandum to defendant Niles requesting another Board meeting to discuss the staff's (including but not limited to the plaintiffs herein) unpaid wages and unpaid vacation pay.  Ms. Coley reminded defendant Niles that defendant Hansard stated that a follow-up Board meeting would take place within four weeks and that such a meeting had not been scheduled.  Defendant Niles informed plaintiff Coley that there would not be any further meetings with the Board of Directors.

60.  Plaintiffs sought legal advice concerning the defendants refusal and failure to pay their wages.

61.  After seeking legal representation, the plaintiffs filed a Complaint on November 9, 2012.

62.  On November 14, 2012 at about 7:00 p.m., defendant Arthur Niles initiated a conversation with plaintiff Jones concerning the filing of this lawsuit.

63.  Defendant Niles informed Mr. Jones that Niles had received "some disturbing news" that day (November 14).

64.  Defendant Niles stated to Mr. Jones that Jones' name was listed as a plaintiff in a civil lawsuit against Vannguard.  Niles further stated that he could understand why Ms. Coley and Mr. Pope were on the lawsuit; but Niles stated that he was surprised to see Mr. Jones' name on the lawsuit.

65.   After Mr. Jones informed Niles that the lawsuit was not personal, Niles stated to Mr. Jones that he thought that they had a better relationship.

66.   During the November 14, 2012 conversation, plaintiff Jones informed Niles that at the last board meeting, Niles' attorney (Soleil) told the plaintiffs that Vannguard was selling the building and closing the organization by December 31, 2012.  Mr. Jones further pointed out to defendant Niles that Niles did not reduce to writing or discuss the plaintiffs' unpaid wages and earned vacation pay and when it would be paid.  Mr. Jones stated to defendant Niles that the plaintiffs were being told to walk away with nothing.

67.   Defendant Niles responded to Mr. Jones, "what if I was to say you are all fired and then you still would walk away with nothing."  Defendant Niles further stated that he did not want to wonder if Mr. Jones or Ms. Coley were planning to search for documents and files.  So, Niles demanded Mr. Jones' set of building keys.  Mr. Jones immediately complied with the request.

68.   After the November 14, 2012 discussion, Mr. Jones entered the building with Niles and they went upstairs where plaintiffs Coley, Taylor and Wright were waiting for Mr. Jones.  They all exited the building at the same time without saying a word to defendant Niles.

69.   On November 26, 2012, defendants Thomas Hansard, Chairman of the Board of Directors and André Soleil, Esq., Acting Secretary of the Board of Directors, posted a resolution of the Board of Directors of defendant Vannguard stating:   "Notice of Termination" and "Closed for Business."   Defendant Hansard and Mr. Soleil announced that "effective November 30, 2012, all corporate operations except those necessary to close, terminate and dissolve the corporation, shall cease.  All outstanding contract obligations shall be shall be returned to the contractee.  All

employees and agents, except as necesssary to close, terminate and dissolve the corporation, shall

terminate."  The Notice further stated, "Mr. Kelvin Hicks and Wendie Moffat shall continue until

November 30, 2012.  The Managing Director, Comptroller and fiscal staff, and the Certified

Public Accountant and Counsel General shall continue to December 31, 2012.  The Managing

Director has authority to extend any of these employees' termination dates by, at most, 10

business days."  The Notice also stated:

> **PLEASE TAKE NOTICE that all other employees last date of work shall be
> November 26, 2012 at close of business.  Final paychecks shall be issued for
> all employees terminated November 26, 2012 by mail on December 5, 2012.**

Movants: A. Soleil & K. Davis
Vote: 4 For/0 Against/1 Abstain/4 Absent

Dated: November 26, 2012
       Brooklyn, NY

70.  The Board of Directors approved closure of the business without making provisions

to pay plaintiff Elizabeth Wright her outstanding and unpaid wages and without making

provisions to pay plaintiffs their outstanding, earned vacation pay.

71.  Upon information and belief, to date, defendant Vannguard remains operational on a

limited basis.

72.  The defendants were aware or should have known that the plaintiffs' job duties

would exceed the 35 hour established threshold and push them over the 40 hour threshold for

overtime entitlement where Vannguard's Policies and Procedures explicitly instructed employees

that "overtime" work, for employees earning more than $12,000 annually, shall be considered

"donated time," and by orally instructing the plaintiffs that they were not to record hours worked

over thirty-five in each week.

73.  The defendants were aware or should have known that the plaintiffs were not paid wages due, including but not limited to, earned vacation pay, by their next regular pay day when their jobs ended.

74.  At all times relevant to this action, defendant Hansard failed to supervise the executive director (general manager), defendant Arthur H. Niles, rubber-stamping Niles' decisions and failing to manage the affairs of defendant Vannguard, in disregard of a known or obvious risk of wage law violations that made it highly probable that the plaintiffs would suffer harm.

75.  Defendant Hansard repeatedly received actual or constructive notice of defendant Vannguard's delayed payment of wages to plaintiffs in violation of federal and state wage and hour laws through reports from the plaintiffs and from memorandums from Vannguard's Comptroller, see ¶ 82 below.

76.  Defendant Hansard, as a member of the board of directors, permitted defendant Niles to remain in his position as executive director (general manager), with full knowledge that wage violations were occurring under Niles' tenure.

77.  Defendant Hansard knew that defendant Vannguard, repeatedly, failed to pay the plaintiffs in a timely manner through memorandums of Vannguard's Comptroller and did nothing to prevent the executive director (general manager) from repeatedly engaging in violations of federal and state wage and hour laws concerning the plaintiffs.

78.  Defendant Hansard failed to make reasonable inquiries concerning the failure to timely make wage payments to the plaintiffs and failed to fully inform himself about defendant Vannguard's repeated failure to timely pay plaintiffs' wages to the extent reasonably appropriate

under the circumstances.

79.  Defendant Hansard acted in reckless disregard of a known or obvious risk of wage and hour law violations, failed to exercise good faith and the degree of diligence, care and skill required of a member of the board of directors in similar circumstances and acted unreasonably in relying upon representations of defendant Niles that made it highly probable that defendant Vannguard engaged in or were engaging in wage and hour law violations under federal and state law.

80.  Through written memoranda and employee complaints, defendant Hansard knew or should have known that defendant Vannguard had violated its statutory obligations under federal and state wage and hour laws by delaying paychecks to plaintiffs.

81.  Upon information and belief, during the relevant period, members of the board of directors received an annual report, as required by N-PCL § 519, detailing Vannguard's assets and liabilities as of the end of the prior twelve month fiscal period, the principal changes in assets and liabilities during the fiscal period, the revenue or receipts of the corporation, both unrestricted and restricted during the fiscal period and, among other things, the expenses or disbursements of the corporation.  During the relevant period, through annual reports, the defendants, including defendant Hansard knew or should have known that defendant Vannguard was under capitalized, or operating at a significant deficit, such that the plaintiffs were in danger of having unpaid wages for work performed on behalf of defendant Vannguard.

82.  In memorandums, including but not limited to those dated September 16, 2011, September 20, 2011, October 19, 2011, May 22, 2012 and June 20, 2012, Vannguard's Comptroller, Willametta Venn, notified defendant Niles and members of the Board of Directors,

18

including but not limited to defendant Hansard, that if funds did not come through, additional cuts and lay offs must be made.  In the Comptroller's memorandum dated June 20, 2012, she notified defendant Niles and members of the Board of Directors that, among other things, the staff payroll for five pay periods, April 9, 2012 - June 15, 2012, remained outstanding.  Through these memorandums, defendants knew or should have known that defendant Vannguard faced a financial crisis but continued to employ plaintiffs without paying wages due and/or delaying wage payments.  The defendants' repeated and knowing failure to pay plaintiffs their wages earned and due is willful within the meaning of the FLSA and the New York Labor Law.

83.  Before filing the amended complaint asserting claims of retaliatory discharge, plaintiffs notified the Attorney General of the State of New York.

84.  A jury trial is demanded.

**Plaintiff Sonya Coley**

85.  Plaintiff Sonya Coley was employed by defendant Vannguard between September 6, 1990 and November 26, 2012 as Director of Youth Development.

86.  As Director of Youth Development, Ms. Coley earned $1,000 per week ($28.71 per hour) on a salary basis.

87.  When defendants locked out plaintiff Coley on November 26, 2012, Vannguard owed her payment for 710 earned vacation hours which remains unpaid.

**Plaintiff Ebony Hall**

88.  Plaintiff Ebony Hall has been employed by the Vannguard Urban Improvement Association, Inc. between September 10, 2001 and November 26, 2012.

89.  Plaintiff Hall has a high school diploma or its equivalent.

19

90.   Her job title was Counselor Specialist.  The duties of this position included recruiting program participants, assisting in participant values clarification and goal setting, assisting with career education advancement by helping participants with decision-making, examination of participant interest, aptitudes and skills in relation to available job opportunities, disseminating information to the target population about services available, monitoring participant progress in the program and other duties as assigned.

91.   Plaintiff Hall did not meet the executive, administrative or professional exemptions to federal and state wage and hour laws that would permit wage payments on a salary basis.

92.   Due to defendant Vannguard's written policy of reducing pay for partial day absences, defendants misclassified Ms. Hall as a salary employee.

93.   Between November 9, 2006 and November 26, 2012, plaintiff Hall earned $500.00 each week ($14.28/hr.) on a salary basis.

94.   Between November 9, 2006 and November 26, 2012 (315 weeks rounded down), plaintiff Hall regularly worked a minimum of 43 hours each week.

95.   During the period November 9, 2006 and November 26, 2012 (315 weeks rounded down), the defendants underpaid Ms. Hall five hours each week at the straight time rate and three hours each week at her overtime rate (21.42/hr.).

96.   When defendants locked out plaintiff Hall on November 26, 2012, Vannguard owed her payment for 182.75 earned vacation hours which remains unpaid.

**Plaintiff Sonya N. Johnson**

97.   Plaintiff Sonya N. Johnson was hired by defendant Vannguard in May 1988.  Her last day of employment was November 26, 2012.

98.  Between November 9, 2006 and November 26, 2012, plaintiff Johnson worked 35 hours each week in the job title of Assistant Director of Youth Development.

99.  Between November 9, 2006 and November 26, 2012, plaintiff Johnson earned $769.23 per week ($21.97/hr.).

100.  Plaintiff Johnson earned vacation pay pursuant to Vannguard's Personnel Policies and Procedures.

101.  When defendants locked out plaintiff Johnson on November 26, 2012, Vannguard owed her payment for 133.50 earned vacation hours which remains unpaid.

**Plaintiff Mossa Jones**

102.  Plaintiff Mossa Jones was hired by defendant Vannguard in September 1990 and worked for the company until November 26, 2012.

103.  In 1989, Plaintiff Jones obtained a B.S. in Sociology from Brockport University (State University of New York).

104.  Between November 9, 2006 and November 26, 2012, his job title was Youth Adult Internship Program Counselor.

105.  As a YAIP Counselor, plaintiff Jones' job duties were to assess student needs, develop plans for career education advancement, provide academic and career advisement, monitor student progress through career education, orient youth during various stages of the Program, act as a liaison between teacher and students and to refer youth to appropriate supportive agencies.

106.  Plaintiff Jones did not meet the executive, administrative or professional exemptions to federal and state wage and hour laws that would permit wage payments on a salary

21

basis.

107.  Due to defendant Vannguard's written policy of reducing pay for partial day absences, defendants misclassified Mr. Jones as a salary employee.

108.  Although employees were normally entitled to a 60 minute lunch break, plaintiff Jones was required to work through his lunch period each day due to the company's policy that employees were not permitted to leave the facility with program participants in the building. During his 60 minute lunch break, plaintiff Jones was required to continue to have engagement with program participants.

109.  Plaintiff Jones' earned $1,230.76 bi-weekly ($615.38 per week; $17.58/hr.) on a salary basis for a 35 hour work week during the period November 9, 2006 and June 1, 2011.

110.  Beginning July 1, 2011 to November 26, 2012, Mr. Jones' rate of pay was $1,230.76 bi-weekly but the defendants paid him $1,000.00 bi-weekly.  Therefore, between July 1, 2011 and November 26, 2012 (73 weeks rounded down), the defendants underpaid Mr. Jones $115.38 each week.

111.  Between November 9, 2006 and November 26, 2012 (315 weeks rounded down), defendants underpaid plaintiff Jones five hours each week at the straight time rate ($17.58/hr.) due to required work performed during 60 minute lunch periods.

112.  When defendants locked out plaintiff Jones' on November 26, 2012, Vannguard owed him 403 hours of earned vacation pay which remains unpaid.

**Plaintiff Ruth R. Richardson**

113.  Plaintiff Ruth Richardson was hired by defendant Vannguard on September 27, 1992.  Her last day of work was November 26, 2012.

22

114. Plaintiff Richardson was often required to stay at work to complete assignments. She worked a minimum of 41 hours each week.

115. Defendant Niles repeatedly informed Ms. Richardson that she was not permitted to document her additional time worked on her time sheets.

116. Between November 9, 2006 and November 26, 2012, plaintiff Richardson's job title was Office Manager/Secretary.

117. Her job duties involved maintaining records and files of all activities of the Youth Council and defendant Niles, answer telephone calls, provide callers with routine information, maintain Executive Director's appointments, receive and answer correspondence, type maintain records and perform secretarial assignments as needed and as directed by the Executive Director and administrative staff members for defendant Vannguard Urban Improvement Association, Inc. and for defendants Vannguard Local Development Corp., defendant 1686 Gates General Partners Corp., defendant Malcolm 1677 General Partners Corp., defendant 1659 Hancock General Partners Corp., and defendant 1661 Macon General Partners Corp., prepare memorandums, notices and announcements of program offerings to students, schools, parents and the community at large, proof-read and edit reports, maintain contact with members of the Board of Directors, run the office and maintain petty cash.

118. The work performed by plaintiff Richardson was not directly related to management policies or general business operations. Plaintiff Richardson did not customarily and regularly exercise discretion and independent judgment in the performance of her duties.

119. Plaintiff Richardson did not meet the executive, administrative or professional exemptions to federal and state wage and hour laws that would permit wage payments on a salary

basis.

120.   Due to defendant Vannguard's written policy of reducing pay for partial day absences, defendants erroneously classified Ms. Richardson as a salary employee even if her duties met the executive, administrative or professional exemptions.

121.   Between November 9, 2006 and November 2, 2012 (312 weeks rounded down), plaintiff Richardson's salary rate was paid $1,057, bi-weekly ($528.50/week, $15.10/hr.) on a salary basis.

122.   Between November 9, 2006 and August 10, 2012 (300 weeks rounded down), plaintiff Richardson's salary rate was $1057.00 bi-weekly; but defendant Vannguard paid her $1,000.00 bi-weekly ($500/wk).  Thus, defendant Vannguard underpaid plaintiff Richardson $28.50 each week.

123.   Between August 13, 2012 and November 26, 2012 (15 weeks rounded down), plaintiff Richardson's rate of pay should have been $528.50 per week ($1057.00 bi-weekly).  The defendants made partial wage payments to plaintiff Richardson of $553.85 bi-weekly ($276.93 week).  During this period, defendant Vannguard underpaid plaintiff Richardson $251.57 each week.

124.   Plaintiff Richardson's earning statement (pay stub) for the period November 3, 2012 - November 16, 2012 stated, "Your salary rate has been changed from $1,057.00 to $1,000.00."

125.   Beginning November 3, 2012, the defendants unlawfully reduced plaintiff Richardson's wage rate from $1,057.00 bi-weekly to $1,000 bi-weekly.

126.   During the period November 9, 2006 and November 26, 2012 (315 weeks rounded down), plaintiff Richardson worked an average of 41 hours each week.  She earned $1057.00 bi-

weekly ($528.50 per week, $15.10 per hour, $22.65 overtime rate).  Plaintiff Richardson was

underpaid five hours each week at the straight time rate and 1 hour each week at her overtime

rate.

127.  On November 26, 2012, defendant Vannguard owed plaintiff Richardson 96.25

hours in earned vacation pay which remains unpaid.

**Plaintiff Salika Taylor**

128.  Plaintiff Taylor was hired by defendant Vannguard Urban Improvement

Association, Inc. on August 8, 1994 as a full-time, regular employee and worked for the company

until November 26, 2012.

129.  Her last job title was Program Coordinator.

130.  Plaintiff Taylor did not meet the executive, administrative or professional

exemptions to federal and state wage and hour laws that would permit wage payments on a salary

basis.

131.  Due to defendant Vannguard's written policy of reducing pay for partial day

absences, defendants erroneously classified Ms. Taylor as a salary employee even if her duties

met the executive, administrative or professional exemptions.

132.  Plaintiff Taylor normally worked about 45 hours per week.

133.  Defendant Vannguard paid plaintiff Taylor $467.50 each week on a salary basis

(13.36/hr, $20.04/OT rate).

134.  For the period November 9, 2006 to November 26, 2012 (315 weeks rounded

down), defendant Vannguard failed to pay plaintiff Taylor five hours each week at the straight

time rate.

135.  For the period November 9, 2006 to November 26, 2012, (315 weeks rounded down) defendant Vannguard failed to pay plaintiff Taylor for five hours each week at her overtime rate.

136.  When Vannguard locked out its employees, plaintiff Taylor had not been paid for 295.55 earned vacation pay hours which remains unpaid.

**Plaintiff Elizabeth Wright**

137.  Defendant Vannguard hired plaintiff Wright as a full-time, regular employee between April 7, 1994 and September 14, 2012.

138.  Ms. Wright worked in the job title of Director of the Resource Center / Community Consultant.  Her job duties included serving as an advocate for tenants in all of defendant Vannguard's buildings (i.e., subsidaries).  Plaintiff Wright's job duties did not involve work directly related to the management policies or the general business operations of defendant Vannguard.  Plaintiff Wright was the only employee responsible for these duties. Her job duties often required her to travel to various buildings after her regular work hours.

139.  Plaintiff Wright did not meet the executive, administrative or professional exemptions to federal and state wage and hour laws that would permit wage payments on a salary basis.

140.  Due to defendant Vannguard's written policy of reducing pay for partial day absences, defendants erroneously classified Ms. Wright as a salary employee even if her duties met the executive, administrative or professional exemptions.

141.  Between April 7, 1994 through February 2012, plaintiff Wright worked at 281 Malcolm X Boulevard, Brooklyn, NY 11233.  Between February 2012 and April 2012, her work

26

location moved to 613-619 George Glees, Jr.'s Way, Brooklyn, NY 11216.  Between April 2012

to September 14, 2012, she worked at 1475 Fulton Street, Brooklyn, New York.  She was

directed to work at these sites by Vannguard management.

142.  Because she normally worked during her 60 minute lunch hour and performed work

after regular work hours, she normally worked a minimum of 45 hours each week for which

defendant Vannguard refused to pay overtime.

143.  Between November 9, 2006 and September 14, 2012 (305 weeks rounded down)

defendant Vannguard paid plaintiff Wright $495.67 per week on a salary basis $14.16/hr;

$21.24/OT rate)

144.  Between November 9, 2006 and September 14, 2012 (305 weeks rounded down),

defendant Vannguard failed and refused to pay plaintiff Wright five hours each week at the

straight time rate and five hours each week at the overtime rate.

145.  When her employment with defendant Vannguard ended on September 14, 2012,

plaintiff Wright had not been paid wages for pay periods - August 13, 2012 - August 24, 2012

(two weeks); August 27, 2012 - September 7, 2012 (two weeks), and the one week period of

September 10, 2012 - September 14, 2012.  These wages remain unpaid.

146.  When her employment ended on September 14, 2012, defendant Vannguard owed

plaintiff Wright 850 hours of earned vacation pay which remains unpaid.

**Plaintiff Thomas Pope**

147.  Plaintiff Pope was hired by defendant Vannguard between November 9, 1998 and

worked for the company until September 21, 2012 when he resigned.

148.  His last job title was Job Developer.

149.  As a Job Developer, his duties were to seek out internship opportunities for program participants, conduct readiness workshops for program participants, examine participant interest, aptitudes and skills in relation to available job opportunities, disseminate information to the target population about services available, monitor participant progress in the program and other duties as assigned.

150.  Plaintiff Pope did not meet the executive, administrative or professional exemptions to federal and state wage and hour laws that would permit wage payments on a salary basis.

151.  Due to defendant Vannguard's written policy of reducing pay for partial day absences, defendants erroneously classified Mr. Pope as a salary employee even if his duties met the executive, administrative or professional exemptions.

152.  Plaintiff Pope normally worked 50 hours per week, including work performed on Saturday and Sunday.

153.  Between November 9, 2006 and September 21, 2012 (306 weeks rounded down), plaintiff Pope earned **an average** of $1,070.95 bi-weekly ($535.48/wk, $15.30/hr, $22.95/OT rate)(actual calculations may be higher due to defendants practice of altering his bi-weekly gross pay).

154.  Defendants repeatedly, and without prior notice, unlawfully altered Mr. Pope's regular rate of pay.

155.  Between November 9, 2006 and September 21, 2012 (306 weeks rounded down), defendant Vannguard failed to pay plaintiff Pope five hours each week in straight time wages and ten hours per week in overtime wages.

156.  When his employment ended on September 21, 2012, defendant Vannguard failed

28

to pay plaintiff Pope $7,914.43 representing the cash value of his earned vacation pay, which remains unpaid.

## COUNT I

## FAIR LABOR STANDARDS ACT

157.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 141 above, and incorporate them as if fully set forth herein.

158.  The defendants violated the FLSA by requiring employees to perform work off the clock, thus depriving them of straight time and overtime wages guaranteed by law.

159.  The defendants violated the FLSA by intentionally misclassifying employees as salaried employees depriving them of straight time and overtime wages guaranteed by law where the plaintiffs did not meet executive, administrative or professional exemptions that would permit wage payments on a salary basis and/or where the defendants implemented a policy or practice of making pay deductions or promulgated an employment policy that created a significant likelihood of deductions.

160.  The defendants violated the FLSA by discharging them before December 31, 2012 and refusing to pay a promised "settlement package" in December 2012 and altering plaintiff Jones' terms and conditions of employment in retaliation for filing the Complaint in this action complaining of wage and hour violations under the FLSA and the New York Labor Law.

161.  The defendants violated the FLSA by failing to make, keep, and preserve records of its employees and of the wages, hours and other conditions and practices of employment as required by law.

162.  The defendants violated the FLSA where the records kept by the defendants failed

29

to show the total number of hours worked each workday and each work week, due to the defendants' instructions, policies and practices.

163.  The defendants violated the FLSA failing to pay plaintiff Elizabeth Wright her wages earned for a five week period on her regular pay days and not later than the next regular pay day after her termination.

COUNT II

NEW YORK LABOR LAW

164.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 148 above, and incorporate them as if fully set forth herein.

165.  The defendants violated the New York Labor Law by delaying issuance of paychecks beyond the date payment was due.

166.  The defendants violated the New York Labor Law by requiring employees to perform work off the clock, thus depriving them of straight time and overtime wages guaranteed by law.

167.  The defendants violated the New York Labor Law by misclassifying the plaintiffs as salaried employees depriving them of straight time and overtime wages guaranteed by law where the plaintiffs did not meet executive, administrative or professional exemptions that would permit wage payments on a salary basis and/or where the defendants implemented a policy or practice of making pay deductions or promulgated an employment policy that created a significant likelihood of deductions.

168.  The defendants violated the New York Labor Law by discharging them before December 31, 2012 and refusing to pay a promised "settlement package" in December 2012 and

altering plaintiff Jones' terms and conditions of employment in retaliation for filing the Complaint in this action complaining of wage and hour violations under the FLSA and the New York Labor Law.

169.  The defendants violated the New York Labor Law by failing to make, keep, and preserve records of its employees and of the wages, hours and other conditions and practices of employment as required by law.

170.  The defendants violated the New York Labor Law where the records kept by the defendants failed to show the total number of hours worked each workday and each work week, due to the defendants' instructions, policies and practices.

171.  The defendants violated the New York Labor Law by failing to provide appropriate notice to plaintiffs that is required under the Wage Theft Prevention Act.

172.  The defendants violated the New York Labor Law by making partial payments of wages earned under the plaintiffs appropriate salary rate.

173.  The defendants violated the New York Labor Law by failing to pay to all plaintiffs vacation hours earned not later than the next regular pay day after their termination.

174.  The defendants violated the New York Labor Law by failing to pay plaintiff Elizabeth Wright wages earned on her regular pay days and not later than the next regular pay day after her termination.

## PRAYER FOR RELIEF

175.  A declaratory judgment that the defendants violated the FLSA and N.Y. Lab. Law as to plaintiffs,

176.  A declaratory judgment that the defendants' violations of federal and state wage and

31

hours laws, including their retaliation provisions, were willful,

177. That judgment be entered in favor of the plaintiffs and against the defendants in the amounts to be determined at trial for (a) unpaid wages, including but not limited to recovery for partial wage payments, (b) unpaid straight time and overtime where plaintiffs were instructed to perform work off the clock, ( c) liquidated damages under the FLSA and the New York Labor Law, including but not limited to the liquidated damages under the Wage Theft Prevention Act, and an award of liquidated damages for each pay period that the defendants delayed issuing paychecks on regular pay days, (d) earned vacation pay, (e) retaliation, including but not limited to emotional distress and punitive damages, (f) an amount not less than $40,000.00 to redress the defendants failure to observe the notice provisions of the Wage Theft Prevention Act, (g) pre- and post-judgment interest, and (h) attorney fees and costs as allowed under the Fair Labor Standards Act and the New York Labor Laws,

178. Injunctive relief, and

179. Any further and other relief the Court deems appropriate.

Dated:          Brooklyn, New York
                May 5, 2014


                                        _____
                                        Irene Donna Thomas, Esq.
                                        Attorney for Plaintiffs

32

Complaint -- 3d Amended (Corrected) -- 050514.wpd