UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SONYA COLEY, EBONY HALL, SONYA
JOHNSON, MOSSA JONES, RUTH RICHARDSON,
SALIKA TAYLOR, ELIZABETH WRIGHT, and
THOMAS POPE,

                    Plaintiffs,

                    v.

VANNGUARD URBAN IMPROVEMENT
ASSOCIATION, INC., and both THOMAS C.
HANSARD JR., individually and as chairman of
the board of directors, and ARTHUR H. NILES,
executive director/general manager of
VANNGUARD URBAN IMPROVEMENT
ASSOCIATION, INC.,

                    Defendants.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
12-CV-5565 (PKC)

PAMELA K. CHEN, United States District Judge:

Pending before the Court is Defendant Thomas C. Hansard's motion to dismiss the second amended complaint ("SAC") (Dkt. 68), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for failure to state a claim upon which relief can be granted. (Dkt. 87.)[1] The SAC asserts violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for failure to pay proper wages for all hours worked. Because the SAC does not plausibly allege that Hansard is an employer under the FLSA, his motion is granted.

---

[1] At the premotion conference in connection with the present motion, the Court granted Plaintiffs leave to submit a third amended complaint. (*See* October 16, 2013 Minute Entry; Dkt. 121.) However, the Court noted that the filing of the third amended complaint would not moot the present motion, and that the disposition of Hansard's motion would be based on the SAC's allegations. (*See* Dkt. 121.) It should be noted that the above case caption does not reflect the new defendants added in Plaintiffs' third amended complaint. (Dkt. 99.)

*BACKGROUND*

Plaintiffs are former employees of Vannguard, a non-profit corporation engaged in the business of vocational training and job preparation for economically disadvantaged youth. (SAC ¶ 11.) As of the briefing of this motion,[2] Defendant was either the current or former chairman of Vannguard's board of directors. (SAC ¶ 7.)[3]

In the SAC, Plaintiffs allege that their paychecks were delayed on a regular basis throughout 2010 to 2012, and that Defendants, including Hansard, were aware of these delays. (SAC ¶¶ 28–31.) Plaintiffs complained frequently, but to no avail; their paychecks continued to be delayed, despite at least some of the Defendants' acknowledgment of the continued chronic delays. (SAC ¶¶ 34–36.) In August 2012, Vannguard had not yet paid Plaintiffs' wages due for that pay period, and Plaintiffs requested a meeting with Vannguard's board of directors to discuss payment. (SAC ¶¶ 37–38.) The meeting was held on August 7, 2012, with numerous Plaintiffs and Defendants present, including Hansard. (SAC ¶ 39.) At the meeting, Vannguard's attorney, Andre Soleil, announced that Vannguard was in the process of selling its assets, and that Plaintiffs would receive a "nice settlement package for Christmas," derived from the proceeds of that sale. (SAC ¶ 40.) Plaintiffs did not receive the promised settlement package. (SAC ¶ 41.)

Thereafter, Plaintiffs continued to experience delays in their paychecks, and continued to advise Vannguard's leadership, particularly Vanguard's Executive Director and General Manager Arthur Niles, a defendant in this case, of the ongoing payroll problems. (SAC ¶¶ 42–44.)

---

[2] The motion was fully briefed as of February 27, 2014.

[3] Although Vannguard appears to have ceased operations, it is unclear whether its board of directors still exists, and, if so, whether Hansard still serves on it.

On November 9, 2012, while still employed at Vannguard, Plaintiffs initiated the instant lawsuit.  (Dkt. 1.)  On November 26, 2012, Hansard and Niles posted in Vannguard's offices a resolution of the board of directors notifying the employees that Vannguard was ceasing operations.  (SAC ¶ 54.)  The notice stated that those employees who were necessary to wind down operations would continue working at Vannguard until December 31, 2012.  (SAC ¶ 54.)  The rest of the employees would be terminated that day, November 26, 2012.  (SAC ¶ 54.)  Plaintiffs were terminated on that date.  (*See* SAC ¶ 55 ("The employees who continued to work for Vannguard were those who were not listed as plaintiffs on the instant lawsuit.").)

In this action, with respect to Hansard, one of Plaintiffs' primary allegations is that, "[a]t all times relevant to this action, Hansard failed to supervise Defendant Niles, Vannguard's Executive Director and General Manager, rubber-stamping Niles' decisions and failing to manage Vannguard's affairs, in disregard of a known or obvious risk of wage law violations that made it highly probable that the plaintiffs would suffer harm."  (SAC ¶ 59.)  Plaintiffs further allege that Hansard had actual or constructive knowledge of wage law violations, but permitted those violations to continue.  (SAC ¶¶ 60–65.)[4]

Hansard moves to dismiss the SAC as to him on two grounds: first, that Plaintiffs fail to allege facts sufficient to demonstrate that Hansard constitutes an employer for purposes of the FLSA; and second, that Hansard is immune from liability under the Volunteer Protection Act of 1997.  (Dkt. 87 at 1.)

*MOTION TO DISMISS STANDARD*

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[4] Plaintiffs' other allegations with respect to Hansard are discussed where pertinent below.  *See infra* Section I.b.

3

*Twombly*, 550 U.S. 544, 570 (2007).  In evaluating a Rule 12(b)(6) motion, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  The liberal notice pleading standard of FRCP 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 573.  Under FRCP 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*  A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]"  *Id.* at 570.

In evaluating a motion to dismiss, the Court is constrained to consider the "four corners" of the operative pleading, here, the SAC, and may not look to evidence outside the pleadings, except in limited circumstances not present here.  *See Mayo v. Fed. Gov't*, 558 Fed. App'x 55, 56 (2d Cir. Mar. 11, 2014) (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).  Accordingly, the Court disregards Hansard's affidavit, which was submitted in connection with Hansard's moving papers, (*see* Dkt. 87), and considers only the well-pleaded factual allegations set forth in the SAC.

*DISCUSSION*

I.      The FLSA

The Fair Labor Standards Act requires that an employer compensate employees for all hours worked at a prevailing minimum wage, and overtime pay of time and a half of the workers' regular hourly rate for each hour worked in excess of 40 hours per work week.  29

Case 1:12-cv-05565-PKC-RER   Document 123   Filed 09/24/14   Page 5 of 13 PageID #: 978

U.S.C. §§ 206(a)(1); 207(a)(2).  *See Yu G. Ke v. Saigon Grill., Inc.*, 595 F. Supp. 2d 240, 254

(S.D.N.Y. 2008) ("Under the terms of the FLSA, employers, as defined, are required to pay their

employees specified minimum wages and overtime.") (citing 29 U.S.C. §§ 206, 207).   An

employer is liable for failing to pay employees the minimum prevailing wage for all hours

worked.

> a.   Definition of "Employer" Under the FLSA

Only an employer may be held liable for FLSA violations.  29 U.S.C. § 207(a)(1).  The

FLSA defines "employer" broadly to include "any person acting directly or indirectly in the

interest of an employer in relation to an employee."  29 U.S.C. § 203(d); *Tony & Susan Alamo

Found. v. Secy'y of Labor*, 471 U.S. 290, 296 (1985) (construing the FLSA liberally because

broad coverage is essential to accomplish the FLSA's remedial goals).[5]

In determining whether a person qualifies as an employer for purposes of the FLSA, the

Court employs the "economic realities test."  *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12

(2d Cir. 1984) ("It is common ground that courts, in determining whether an employment

relationship exists for purposes of the FLSA, must evaluate the 'economic reality' of the

relationship."); *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir.

2008) ("[T]he Court has instructed that the determination of whether an employer-employee

---

[5] With respect to Plaintiffs' claims under the NYLL, "[t]he NYLL's definitions are nearly identical to the FLSA's."  *Glatt v. Fox Searchlight Pictures Inc.*, 11-CV-6784 (WHP), 2013 WL 2495140, at *6 (S.D.N.Y. June 11, 2013) (citing N.Y. Lab. Law § 2(7)).  The NYLL defines "employer" to include "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer."  N.Y. Lab. Law. §§ 190(3), 651(6).  District courts in this Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."  *Sethi v. Narod*, 11-CV-2511 (MKB), 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013) (citations and quotations omitted) (collecting cases).  Accordingly, the Court addresses Plaintiffs' FLSA and NYLL claims in tandem.

5

relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'") (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). Under the *Carter* economic realities test, the court must evaluate:

> [W]hether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Carter*, 735 F.2d at 12 (citing *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). No one factor is dispositive and the inquiry into an employment relationship is fact intensive. *Barfield*, 537 F.3d at 141–43. Although *Carter* guides the Court's analysis, "employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42. In addition to the *Carter* factors, the Court remains "free to consider any other factors it deems relevant to its assessment of the economic realities" of the employer-employee relationship. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

In cases such as this, where a board member or shareholder of a corporation is the purported employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question," *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192–93 (S.D.N.Y. 2003), not the purported employer's status as a board member. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 311 (S.D.N.Y. 2011) ("Courts that have found majority or sole shareholders liable [under the FLSA] have not relied solely on shareholder status, but have looked also to the degree of operational control a shareholder exerts over the corporation's functions.") (collecting cases). "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status. Instead, to be an

'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). Notably,

> [the] status [of employer] does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control "do[] not diminish the significance of its existence."

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)). Accordingly, the Court must consider the "totality of the circumstances" in determining whether Hansard had "operational control" over Vannguard's functions and employees—which need not be continuous or absolute—and not base its determination solely on Hansard's status as a member of Vannguard's board of directors.[6] *Id.*

      b. <u>The SAC Fails to Plausibly Allege that Hansard is an Employer under the FLSA</u>

In light of the *Carter* economic reality test factors, and based on the totality of the circumstances, Plaintiffs' SAC fails to allege adequate factual material to state a plausible claim that Hansard is an employer for purposes of the FLSA.

---

[6] In some cases, courts have found that a corporate officer's control and/or ownership over a corporation to be so complete so as to render the officer an "employer" under the FLSA. *See Solis v. Velocity Esp., Inc.*, 2010 WL 2990293, at *4 (D. Or. July 2010) (citing cases). Courts have broadly interpreted the FLSA's definition of employer in this way in order to prevent "an officer from using the corporation to shield himself from the consequences of violative conduct that is as attributable to the individual as to the corporate entity." *Id.* Plaintiffs here have alleged no facts suggesting that Hansard has any ownership of Vannguard whatsoever or that, if he did, that his ownership is so complete as to render him an "employer." Indeed, there are no allegations that Hansard is, or was ever, paid for his service on the board. Accordingly, there is no basis to conclude that Hansard is an "employer" based *solely* on his status as a Vannguard board member.

With respect to the first *Carter* factor, Plaintiffs argue that the SAC adequately alleges that Hansard "had the power to hire and fire the employees." (*See* Dkt. 88 at 5–10.) However, Plaintiffs' characterization of the SAC's allegations is inaccurate in critical respects. Plaintiffs argue that Hansard "*fired* certain employees by posting a Notice of Termination on the door" and "*extended* the employment of others and authorized the Managing director (Niles) to extend the employment of those employees." (Dkt. 88 at 9 (emphasis added).)[7] In fact, the SAC merely alleges that Hansard, along with Niles, "posted *a resolution of the Board of Directors*" on the door of the Vannguard offices, and that Hansard and Niles "*announced*" that Vannguard would cease operating. (Dkt. 68 ¶ 54 (emphases added).) Contrary to Plaintiffs' argument, neither of these allegations state a plausible claim that Hansard, individually, as opposed to the Board of Directors as an entity, had any authority to hire or fire employees at Vannguard, or indeed ever exercised that power, if he had it. Rather, the SAC only alleges that Hansard *announced* the *board's* decision to cease operations and to terminate the employees.

This factual distinction is critical here because, under New York law, an individual board member is not empowered to act on behalf of its organization—only the board as a whole is—and voting members of boards are not liable for the acts of the board merely by virtue of their status as board members. *See, e.g.*, *DeWald v. Amsterdam Housing Auth.*, 823 F. Supp. 94, 103 (N.D.N.Y. 1993) (stating that a board member may not act on behalf of the organization in connection with employment matters unless "vested with independent authority to effectuate employment decisions"); *Walker v. Windsor Court Homeowners Ass'n*, 35 A.D.3d 725, 727–28 (2d Dep't 2006) (noting that, although the defendants were members of the board, "none of them

---

[7] Plaintiffs' argument about Hansard extending, or authorizing the extension of, some Vannguard employees' tenure is based on the Notice's directive that "[a]ll employees and agents, except as necessary to close, terminate and dissolve the corporation, shall terminate." (SAC ¶ 54; Dkt. 88 at 9.)

acted individually without the authority of a vote by the Board.  Thus, they could not be held

liable in their individual capacities[.]").  Importantly, Plaintiff has made no allegation that

Hansard, in his capacity as an individual board member, is empowered to act, or acted, on behalf

of the board in employment matters at Vannguard.  Thus, given the insufficiency of SAC's

allegations regarding Hansard's individual control over, and involvement in, employment

decisions, the first *Carter* factor does not favor a finding that Hansard is an employer.[8]

With respect to the second and fourth *Carter* factors, Plaintiffs allege no pertinent facts

and make no argument concerning whether Hansard "supervised and controlled employee work

schedules or conditions of employment," or "maintained employment records."  *Carter*, 735 F.2d

at 12.  Accordingly, those two factors favor a finding that Hansard was not Plaintiffs' employer.

Lastly, regarding the third *Carter* factor, whether Hansard "determined the rate and

method of payment" of employees, Plaintiffs' primary factual allegation is a conclusory one:

> A member of the Board of Directors, defendant Hansard has been an 'employer'
> within the meaning of the [FLSA and NYLL].  As a member of the Board of
> Directors, defendant Hansard was responsible to manage the affairs of defendant
> Vannguard, including, but not limited to, making decisions concerning employee
> wages and payment of employee wages.

(Dkt. 68 ¶ 8.)  Although Plaintiffs' allegation is somewhat vague, it could be construed to

allege that Hansard, in "making decisions concerning employee wages and payment of

employee wages" (Dkt. 68 ¶ 8), in fact, "determined the rate and method of payment," as

---

[8] Furthermore, to the extent that Plaintiffs have sued Hansard in his capacity as board chairman, he is immune from suit because, under New York law, individual board members may not act on their own and instead only function as a single entity.  *See Walker*, 35 A.D.3d at 727–28; *cf. Bernstein v. Starrett City*, 303 A.D.2d 530, 532 (2d Dep't 2003) ("It is well settled that a corporate officer may not be held liable for the negligence of the corporation merely because of his or her official relationship to it."); *Myers v. BMR Bldg. Inspections, Inc.*, 29 A.D.3d 546, 546 (2d Dep't 2006) (dismissing claims against individuals who "acted as corporate representatives and not in their individual capacit[ies]").  Accordingly, under these circumstances, an individual board member may not be held liable merely by way of his/her official relationship to the corporation on which board he or she sits.

9

per *Carter*.  However, Plaintiffs allege no facts other than Hansard's status as a board member to support the conclusory allegation that he was responsible for "making decisions concerning employee wages and payment of employee wages."  (Dkt. 68 ¶ 8). Indeed, there is no allegation that Hansard ever made a decision regarding employee wages or payment of those wages.  Nor do Plaintiffs allege that board members are generally tasked with these responsibilities.  *Cf. Walker*, 35 A.D.3d at 727–28 (dismissing claims against individual board members where there were no allegations any acted individually without the authority of a board vote).  The SAC's conclusions on this issue, couched as factual allegations, are inadequate to tip the third *Carter* factor in Plaintiffs' favor.

Plaintiffs' remaining allegations as to Hansard vaguely suggest that he participated in, or failed to rectify, the mismanagement of Vannguard, which allegedly resulted in FLSA violations. (*See* Dkt. 68 ¶¶ 59–65 (alleging that Hansard: failed to supervise Vannguard's Executive Director/General Manager Niles; received notice that Vannguard had delayed payment to Plaintiffs; failed to make reasonable inquiries regarding wage payments; and acted in reckless disregard of FLSA wage-and-hour violations).)  However, none of these allegations state facts that are material to determining whether Hansard is an employer under the FLSA.  First, Plaintiffs' assertions about Hansard's failure to inquire into the Plaintiff's wage payment concerns *assume*, without factual basis, that Hansard had authority over, or responsibility for, these issues.[9]  But, as discussed, the only fact that Plaintiffs rely on to support this conclusion is

---

[9] If anything, the allegations that Hansard failed to properly supervise Defendant Niles and also failed to inquire into Vannguard's delays and failures to pay employees suggest that Hansard was *not* involved in the daily management of the organization, and was removed from the employer-employee relationship between Vannguard and Plaintiffs.  (SAC ¶ 59–61, 64.)

Hansard's status as a board member, which is insufficient. Second, Plaintiffs' allegation that Hansard failed to supervise Defendant Niles again *assumes* that Hansard was responsible for supervising Niles. Furthermore, supervision of Niles, who is a manager, and not an employee, of Vannguard, would not, standing alone, make Hansard an "employer." This is because supervision of managers, in itself, does not equate to control over the day-to-day operations of the organization with respect to *Plaintiffs' employment*. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 310 (S.D.N.Y. 2011) (citing *Ansoumana*, 255 F. Supp. 2d at 193 ("Although an owner need not exercise direct control over an employee to be an employer, it was clear in [other] cases that the owner defendants in question actually exercised operational control over the daily operations of their businesses."); *see also Catsimatidis*, 722 F.3d at 109 ("It is appropriate, as we implicitly recognized in [*Herman*], to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation"). Thus, Plaintiffs' allegations regarding Hansard's purported mismanagement of Vannguard as a board member are inapposite to Hansard's status as an employer for FLSA purposes.

Generally speaking, it is presumed that a board member is not concerned with, or involved in, the day-to-day operations of an organization, and thus will not be deemed an employer for purposes of the FLSA, absent adequate allegations or evidence concerning the employer's functional control of employees. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998) (remanding for determination of whether board members exercised sufficient "control" over temporary workers to qualify as "employers" under the FLSA); *Ansoumana*, 225 F. Supp. 2d at 199–200 (basing finding that board member was an employer on the "power, authority, and control to direct the delivery workers in their tasks"). In limited

circumstances, "officers and owners of corporations may be deemed employers under the FLSA where 'the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions.'" *Ansoumana*, 255 F. Supp. 2d at 192 (citing *Lopez*, 14 F. Supp. 2d 405, 412 (S.D.N.Y. 1998)).   But in those cases where shareholders and board members of organizations have been found to be employers for purposes of the FLSA, the relationship between the alleged employer and employee bore sufficient indicia of "operational control" over the plaintiff employee(s).   For example, in *Herman v. RSR Security Servs., Ltd.*, 172 F.3d 132 (2d Cir. 1999), the Second Circuit held that a 50% shareholder and board member of a for-profit organization qualified as an employer under the FLSA because he had the authority to hire managerial staff, occasionally supervised and controlled employee work schedules, and had the authority to sign payroll checks.  *Id.*

Here, in contrast to *Herman*, there is no well-pleaded allegation that Hansard has, or ever had, the power to hire and/or fire employees, and there is no allegation that Hansard ever supervised or controlled employee work schedules or conditions of employment, or the rate and/or method of payment of employees.   Moreover, in contrast to *Herman*, Hansard is not a stockholder in Vannguard, which is a non-profit corporation.  *Id.* at 141 (noting that the party deemed to be an employer was a 50% stockowner of the organization); *see also Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 291 n.31 (E.D.N.Y. 2005) (noting that the *Herman* Court's finding was based, at least in part, on the employer's ownership share in the company).   Accordingly, consistent with *Herman*, Hansard's status as a Vannguard board member, standing alone, is insufficient to make him an "employer."

In sum, analysis of the *Carter* factors and consideration of the totality of the circumstances leads the Court to conclude that Hansard does not qualify as an employer for purposes of the FLSA.

II.    Volunteer Protection Act

Because the Court finds that Hansard is not an employer under the FLSA, the Court declines to address Hansard's arguments with respect to the Volunteer Protection Act.  (*See* Dkt. 87 at 11–17.)

*CONCLUSION*

For the reasons stated above, Plaintiffs' SAC lacks adequate factual allegations to state a plausible claim that Hansard is an employer for purposes of the FLSA.  Accordingly, Plaintiffs fail to state a claim to relief, and Hansard's motion to dismiss the SAC pursuant to FRCP 12(b)(6) hereby is granted.  The Clerk of Court respectfully is directed to terminate Hansard as a defendant in this action.

SO ORDERED:


  /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: September 24, 2014
       Brooklyn, New York