UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
SONYA COLEY, ET AL.,

                    Plaintiffs,

          - against -

VANNGUARD URBAN IMPROVEMENT
ASSOCIATION, INC., ET AL.,

                    Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

**MEMORANDUM & ORDER**

12-CV-5565 (PKC) (RER)

   In this action alleging violations of the Fair Labor Standards Act ("FLSA") and the New

York Labor Law ("NYLL"), Plaintiffs Sonya Coley, Ebony Hall, Sonya Johnson, Mossa Jones,

Ruth Richardson, Salika Taylor, Elizabeth Wright, and Thomas Pope now move for default

judgment against Defendant Arthur Niles. This Court has already granted default judgments

against Defendants Vannguard Urban Improvement Association, Inc. ("Vannguard" or "VUIA");

Vannguard Local Development Corporation, Inc. ("Local" or "VLDC"); and 1686 Gates General

Partners Corp., Malcolm 1677 General Partners Corp., 1659 Hancock General Partners Corp., and

1661 Macon General Partners Corp. (collectively, "the Partnership Corporations"). (Dkt. 220.)

For the reasons set forth below, Plaintiffs' motion for default judgment is GRANTED as to the

liability of Defendant Niles, and the Court holds that Defendants Niles, Vannguard, Local, and the

Partnership Corporations (collectively, "Defendants") are liable for $929,973.07.

## BACKGROUND

   Plaintiffs filed their original complaint on November 9, 2012, naming Vannguard, among

others, as Defendants. (Dkt. 1.) Based on Vannguard's failure to answer (Dkt. 12), the Clerk of

Court entered default on April 25, 2013. (4/25/13 Dkt. Entry of Default.) On May 3, 2013,

Plaintiffs moved for default judgment against Vannguard. (Dkt. 14.) However, Vannguard, whose counsel, Andre Soleil, entered an appearance on May 28, 2013 (Dkt. 31), sought to respond to the complaint, and appeared at a status conference on July 22, 2013, at which the Honorable Ramon E. Reyes vacated the entry of default (7/22/13 Minute Order). Plaintiffs filed an amended complaint on September 3, 2013 (Dkt. 58) and a Second Amended Complaint ("SAC") on October 23, 2013, (Dkt. 68). Niles and Vannguard both answered the SAC, and asserted similar counterclaims against Plaintiff Coley, on November 21 and November 22, 2013, respectively. (Dkts. 70, 71.) On May 5, 2014, with leave of the Court and over Vannguard's objections (Dkt. 96), Plaintiffs filed the Third Amended Complaint, now the operative complaint in this action, in which Plaintiffs named Local and the Partnership Corporations as Defendants (Dkt. 100).

Plaintiffs served Local and the Partnership Corporations on October 1, 2015 (*see* Dkts. 135–39), but those Defendants failed to answer or otherwise move against the Third Amended Complaint. Plaintiffs sought another entry of default against Local and the Partnership Corporations. (*See* 11/23/15 Minute Entry; Dkt. 140.) The Clerk of Court entered default on December 8, 2015 (Dkt. 144), and Plaintiffs then moved for default judgment as to those Defendants on December 12, 2015 (Dkt. 145).

On January 29, 2016, Vannguard's counsel, Soleil, filed a letter advising the Court that "Vannguard is currently an empty entity with no directors, employees, properties, interests, etc.", and that the company would not continue to defend itself in the litigation. (Dkt. 153 at 3.) On March 16, 2016, Plaintiffs sought entry of default against Vannguard (Dkt. 173), which the Clerk of Court entered on March 25, 2016 (3/25/16 Dkt. Entry of Default). Plaintiffs moved for default judgment against Vannguard on April 13, 2016. (Dkt. 178.) On August 5, 2016, the Court granted default judgment against Vannguard, Local, and the Partnership Corporations, but reserved the

damages inquest, pursuant to Fed. R. Civ. P. 55(b)(2), as to these defaulting defendants until the resolution of the liability portion of the case against Niles, after which the Court would hold a damages determination as to all Defendants. (Dkt. 220.) On April 10, 2017, the Clerk of Court entered a default order against Niles.[1] (4/10/17 Dkt. Entry of Default.) On April 12, 2017, Plaintiffs moved for a default judgment against Niles, and moved to dismiss Niles's counterclaim against Plaintiff Coley. (Dkt. 269.)

## DISCUSSION

## I. Legal Standard for Default Judgment

Under Rule 55(a) of the Federal Rules of Civil Procedure ("Rule 55(a)"), the process for entry of default against a party who fails to defend is two-fold: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d Cir. 2011) (citation omitted). The entry of a default under Rule 55(a) is an admission of the well-pleaded factual allegations in the complaint except for claims for damages. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Taking the factual allegations and all reasonable inferences as true, the court determines whether such alleged facts show liability on the cause of action claimed. *AF Holdings, LLC v. Olivas*, 3:12-CV-1401 (JBA), 2014 WL 4782816, at *2 (D. Conn. Sept. 24, 2014). In other words, "after default . . . it remains for the

---

[1] The Court dismissed Thomas Hansard as a defendant on September 24, 2014. (Dkt. 123.) The Court has also conducted extensive proceedings in connection with Plaintiffs' motion to seize and restrain Defendants' assets, including multiple evidentiary hearings at which, *inter alia,* Niles and Soleil testified. (*See* Dkts. 171, 271; 6/1/2016 Minute Entry; 4/10/2017 Minute Entry). On May 3, 2016, the Court held a preliminary injunction hearing about whether to restrain the assets of the Vannguard entities. (*See* 5/3/2016 Hearing Tr., Dkt. 193.) On December 13, 2016, the Court ordered the restraint of assets for the Vannguard's entities and Niles. (Dkt. 228 at 1-2.). The asset restraint proceedings are ongoing; Soleil has been directed to appear and testify on April 10, 2018 about his receipt and distribution of proceeds from a property sale by Vannguard in 2013. (1/30/18 Order Granting Motion to Adjourn Conference.)

court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (quotation marks omitted) (alteration in original). A district court is empowered, under Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Rule 55(b)(2)"), in the exercise of its discretion, to "'conduct hearings or make referrals' as may be necessary, *inter alia,* to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(b)(2)(B)–(C)).

## II.     Entry of Default Against Defendants

The "typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer." *Id.* (quotation marks omitted) (alteration in original). The Court previously noted that this was the case with Local and the Partnership Corporations, which failed to answer or move against the Third Amended Complaint after being properly served. (Dkt. 220, at 3.) The Partnership Corporations also failed to enter an appearance in a subsequent conference before the Court on November 23, 2015. (*Id.*) Therefore, the entry of default against Local and the Partnership Corporations was proper.

"[A] district court is also empowered to enter a default against a defendant [that] has failed to . . . otherwise defend." *Mickalis*, 645 F.3d at 129 (quotation marks omitted) (alterations in original). The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *Id.* It has found entry of default proper in a variety of circumstances, *i.e.*, where a defendant has failed to appear for trial after a lack of diligence in pre-trial proceedings, *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64–65 (2d Cir. 1986); where a defendant has willfully disregarded court orders, *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310

(2d Cir. 1991); and where a defendant has refused to participate further in litigation, *Mickalis*, 645 F.3d at 129–30.

The Court previously held that Vannguard failed to "otherwise defend" against the current litigation. (Dkt. 220, at 5.) Even though Vannguard participated at various points in this litigation, Vannguard refused, at least as of January 29, 2016, to respond to the litigation, seemingly because there is no longer any corporate entity left to do so. (*See, e.g.*, Dkt. 153, at 3 ("Vannguard is currently an empty entity with no directors, employees, properties, interests, etc."; "Vannguard only has one volunteer agent left—[Soleil]," and he "ha[d] only one authorized purpose— Vannguard's dissolution").) As a result, the Court found that entry of default against Vannguard was proper. (Dkt. 220, at 6.)

Like Vannguard, Niles also failed to "otherwise defend" himself in the present action. During a hearing on August 8, 2016, counsel for Niles stated, "it is unclear whether Niles can or will continue to defend himself in this litigation." (8/8/16 Minute Entry.) The Court set a telephonic conference for March 2, 2017 to discuss Niles's continuing involvement in the case, and counsel for Niles represented that Niles may not defend this action at trial. (3/7/17 Minute Entry.) In a letter filed on March 9, 2017, Niles notified the Court that "[a]t this juncture, Defendant is not going to defend against Plaintiffs' action at trial, provided that there are no material changes in the status of the case, which we do not anticipate." (Dkt. 254, at 1.) On March 10, 2017, this Court directed Plaintiffs to move for a default order and thereafter a default judgment against Niles (3/10/17 Order); Plaintiffs have since complied (Dkt. 259). The Court will now address the merits of Plaintiffs' motion for default judgment against all of the defendants, including Niles. The Court will also address Plaintiffs' motion to dismiss the counterclaim against Plaintiff Sonya Coley.

**III.     Defendants Qualify as Employers Under the FLSA and NYLL**

Liability under the FLSA extends only to "employers," defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" means to "suffer or permit to work". *Id*. at § 203(g). These definitions "sweep broadly" in "identifying the persons or entities who qualify as 'employers' subject to [the FLSA]," *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008), and have a "striking breadth" meant to "cover some parties who might not qualify . . . under a strict application of traditional agency law principles," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). For the following reasons, the Court finds that Defendants Niles, Vannguard, and the Partnership Corporations are employers under the FLSA and NYLL

> **A.      Vannguard, Local, and the Partnership Corporations Were Plaintiffs' Employers Under the FLSA and the NYLL**

The FLSA's requirements apply "pursuant to either 'individual' or 'enterprise' coverage," the former encompassing individuals "engaged directly in interstate commerce or in the production of goods for interstate commerce" and the latter, "substantially broaden[ing] the scope of [FLSA]," encompassing "any employee of an enterprise engaged in interstate commerce." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985); *see also Jacobs v. N.Y. Foundling Hosp.,* 577 F.3d 93, 96 (2d Cir. 2009) (FLSA's requirements apply "if an employee either: (1) is engaged in commerce or in the production of goods for commerce, or (2) is employed in an *enterprise* engaged in commerce or in the production of goods for commerce") (quotation marks omitted) (emphasis in original).

Enterprise coverage "has been interpreted broadly by the courts." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015). Enterprise liability under the FLSA extends to entities that: (1) perform related activities "for a common business purpose"; (2) have

"employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (3) have an "annual gross volume of sales made or business done [] not less than $500,000." 29 U.S.C. § 203(r)–(s).

This Court previously held that Plaintiffs' allegations are sufficient to establish that enterprise liability extended to Vannguard, Local, and the Partnership Corporations under the FLSA.  (Dkt. 220, at 15 (holding, in prior order granting Plaintiffs' motion for default judgment, that Vannguard and Partnership Corporations are liable as employers).)  Vannguard, Local, and the Partnership Corporations:  (1) performed activities through contracts with New York City for the common business purposes of providing services to disadvantaged teens and young adults; (2) used and worked with goods that have been moved in or produced in interstate commerce; and (3) had an annual gross volume of business that was not less than $500,000.  (Dkt. 100, at ¶¶ 4-6.)

Vannguard was clearly Plaintiffs' employer:  Vannguard hired Plaintiffs (*id.* at ¶ 28), issued Plaintiffs' paychecks, albeit belatedly on many occasions (*id.* at ¶¶ 43–46), covered Plaintiffs' health insurance and retirement plans (*id.* at ¶ 35), withheld taxes (*id.* at ¶ 36), provided Plaintiffs' W-2 and W-4 tax forms classifying Plaintiffs as employees (*id.* at ¶ 37), and "was responsible for providing the instrumentalities by which the work was to be done," *i.e.*, "computers, office equipment, and office supplies,"  (*id.* at ¶ 40).

## B.     Niles Was Plaintiffs' Employer Under the FLSA

To determine who qualifies as an "employer" for purposes of individual liability, the Second Circuit looks to the factors enumerated in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) (the "*Carter* factors"), which are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions

of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12. Satisfaction of these factors is sufficient, but not necessary, to establish an employer-employee relationship. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003).

The Court considers Niles to be Plaintiffs' employer because he satisfied all of the *Carter* factors. At the May 3, 2016 hearing, Niles admitted that, during the relevant period, he served as executive director for both Vannguard and Local and that he held the position of general manager for Vannguard. (5/3/2016 Hearing Tr., Dkt. 193, at 19–20.) He testified that at Vannguard, he had employees under him and was responsible for the day-to-day direction of the workforce, and that as executive director, he was authorized to sign checks on behalf of Vannguard and Local. (*Id.* at 20–21.) Similarly, in Niles's answer to Plaintiffs' Second Amended Complaint, he admitted Plaintiffs' allegation that "[a]s Executive Director and General Manager, defendant Niles possessed the power to control the plaintiffs[, and] was authorized to hire, fire, discipline, assign employees, set work schedules, determine the rate and method of wage payments, establish classification of employees and maintain employment records." (Dkt. 68, at ¶ 10; Dkt. 70, at ¶ 3.) For these reasons, Niles qualifies as one of Plaintiffs' employers under the FLSA.

### C.  Defendants Were Plaintiffs' Employers Under the NYLL

The NYLL defines "employer" to include "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 373 (E.D.N.Y. 2013) (citing NYLL §§ 190(3), 651(6)) (quotation marks omitted). The NYLL and FLSA definitions are nearly identical, and, as a result, "[d]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA," *id.* (quotation marks and citation omitted), and have "regularly applied the same factors and tests to determine whether entities are joint employers

under the NYLL," *id*. at 375.  NYLL also permits liability under the "single employer" doctrine. *See, e.g.*, *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 14-CV-5269 (ARR)(JO), 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) ("The 'single integrated enterprise doctrine' allows for multiple defendants to be jointly and severally liable for any FLSA and NYLL violations.").  Thus, for the same reasons discussed with respect to the FLSA, the Court finds that all Defendants qualify under the NYLL as Plaintiffs' "employer".

## III.  Defendants' Liability under the FLSA and NYLL

### A.  <u>The FLSA</u>

The FLSA requires an employer to compensate employees, other than those falling into specific exemptions, for all hours worked, at the prevailing minimum wage, and provide overtime compensation for hours worked over 40 in a given workweek.  29 U.S.C. §§ 206, 207.  In addition, courts have "long interpreted [the FLSA] to include a prompt payment requirement."  *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998).

Plaintiffs allege that Defendants violated the FLSA by: (1) depriving Plaintiffs of straight time and overtime pay (including forcing them to work off the clock); (2) misclassifying Plaintiffs as exempt from the minimum wage and overtime requirements of the FLSA (even though their tasks did not meet the criteria for those exemptions); (3) discharging Plaintiffs before December 31, 2012 and refusing to pay a promised "settlement package"; (4) failing to make, keep, and preserve records of Plaintiffs' wages, hours, and conditions and practices of employment; (5) failing to give certain required notices regarding employers' obligations under the law; and (6) failing to pay Plaintiff Elizabeth Wright her regular wages.  (Dkt. 100, at ¶¶ 157–163.)

Plaintiffs' allegations are supported by admissions made by Niles, Vannguard's Executive Director, prior to his default in this litigation.  Among other things, Niles admitted to "author[ing]

letters on behalf of plaintiffs . . . informing [their creditors] . . . that defendant Vannguard had been unable to meet payroll obligations and these plaintiffs 'may be presently delinquent in their account with you . . . through no fault of [their] own.'" (SAC, Dkt. 68, at ¶ 35; Niles's Answer to SAC ("Niles's SAC Ans."), Dkt. 70, at ¶ 3.) Niles admitted that for a 12-week period before August 7, 2012, Vannguard "had not paid the plaintiffs wages earned on their regular pay days" and that Plaintiffs complained directly to the Vannguard board at an August 7, 2012 meeting about the hardships Plaintiffs were suffering as a result of Vannguard's repeated failures to pay them during this 12-week period. (SAC, at ¶¶ 37-42; Niles's SAC Ans., at ¶ 3.) With respect to these events, Niles also testified that Soleil informed the Vannguard staff that they would receive their paychecks by August 10, 2012, but that Vannguard failed to pay them. (SAC, at ¶¶ 38-43; Niles's SAC Ans., at ¶ 3.)

At a hearing held on May 3, 2016, Niles admitted multiple times that Vannguard employees were routinely paid late. In testifying about the $300,000 "severance payment" he withdrew from the Vannguard account, Niles attempted to justify it by claiming that Vannguard owed him $720,000 in back pay and that "[t]here were all these deficits that Vannguard was trying to catch up on and payroll." (5/3/16 Hearing Tr., Dkt. 193, at 46, 74.) He also stated, "we often . . . missed payroll, and that seemed to have been almost characteristic of the nature of the business that Vannguard was in," although he claimed that Vannguard's staff was paid prior to Niles receiving his severance package. (*Id*. at 48.) Thus, Plaintiffs' allegations and the admissions of Defendant Niles are sufficient to establish that Defendants violated the FLSA's requirements regarding the compensation of employees at the prevailing minimum wage, overtime compensation, and the prompt and full payment of wages.

**B.** **NYLL**

The Court's analysis applies equally to Plaintiffs' NYLL allegations, because "[t]he NYLL and the FLSA are analytically nearly identical." *Saucedo v. On the Spot Audio Corp*., 16-CV-451(CBA)(CLP), 2016 WL 8376837, at *6 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 16-CV-451(CBA)(CLP), 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL is the "state analogue" to the FLSA and "otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime"). The NYLL requires that covered employees are paid "in accordance with the agreed terms of employment." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (citing NYLL § 191(1)(d)) (discussing these provisions of the FLSA and NYLL as similar); *see also* NYLL § 191(1)(a), (c) (also imposing this requirement).

Plaintiffs claim that Defendants violated the NYLL by, *inter alia*: (1) depriving Plaintiffs of straight time and overtime pay (including forcing them to work off the clock); (2) delaying the issuance of paychecks beyond the payments' due dates; (3) misclassifying Plaintiffs as exempt from the minimum wage and overtime requirements of NYLL (even though their tasks did not meet the criteria for those exemptions); (4) discharging Plaintiffs before December 31, 2012 and refusing to pay a promised "settlement package" in December 2012; (5) altering Plaintiff Jones's terms and conditions of employment in retaliation for filing the Complaint; (6) failing to make, keep, and preserve records of Plaintiffs' wages, hours, and conditions and practices of employment; (7) failing to give certain required notices regarding employers' obligations under the law; (8) making partial payments of wages earned under Plaintiffs' appropriate salary rate; (9) failing to pay Plaintiffs their vacation hours; and (10) failing to pay Plaintiff Elizabeth Wright her

regular wages. (Dkt. 100, at ¶¶ 164–174.) As with Plaintiffs' FLSA claims, these allegations are sufficient to establish violations of NYLL.

In addition to these allegations and Niles's other numerous admissions relating to Vannguard's failure to promptly or fully compensate Plaintiffs, in his answer to the SAC, Niles admitted that "[t]he defendants violated the New York Labor Law by delaying issuance of paychecks beyond the date payment was due" and "by making partial payments of wages earned under the plaintiffs['] appropriate salary rate." (SAC, at ¶ 150, 157; Niles's SAC Ans., at ¶ 3.)

As with Plaintiffs' FLSA claims, the SAC's allegations and Niles's admissions establish violations of the NYLL's requirements of prompt and full payment of wages.

## IV.    Joint and Several Liability

Plaintiffs seek to have Defendants held jointly and severally liable for damages. As stated above, corporations and corporate officers with operational control over employees both fit the definition of "employer" under the FLSA and NYLL. *Khurana v. JMP USA, Inc.*, 14-CV-4448, 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017). Courts have held that establishing joint and several liability under the FLSA and NYLL requires no further analysis. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) (quoting 29 C.F.R. § 791.2(b)) ("'[J]oint employment' arises when the employee 'performs work which simultaneously benefits two or more employers' and 'one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee.'"). Thus, all Defendants are jointly and severally liable for the entire amount of damages awarded in this case.

## V.    Statute of Limitations

Plaintiffs face no obstacle to obtaining relief based on the FLSA's or NYLL's statute of limitations periods. The FLSA provides for a two-year statute of limitations period, which may

be extended to three years upon a showing that the FLSA violations were willful. 29 U.S.C. § 255(a). The NYLL has a six-year statute of limitations period. NYLL § 663(3).

The Court finds that there is sufficient evidence that Defendants' FLSA violations were willful. As noted, Niles has admitted that during an August 7, 2012 meeting, Plaintiffs informed Vannguard board members about the organization's repeated failures to pay them, and that Soleil informed the Vannguard staff that they would be paid by August 10, 2012, which did not, in fact, occur. (Dkt. 68, at ¶¶ 38-43; Dkt. 70, at ¶ 3.) This evidence, combined with Niles's testimony about Vannguard "often" missing payroll (5/3/16 Hearing Tr., Dkt. 193, at 46-48), gives rise to a legitimate inference that Defendants' violations were willful, and thus the FLSA's three-year statute of limitations applies.

Given the three-year statute of limitations applicable under the FLSA and the six-year statute of limitations applicable under the NYLL, Plaintiffs' FLSA and NYLL claims were timely filed.

## VI. Vannguard's and Niles's Counterclaims against Sonya Coley

In its Answer to the SAC, Vannguard filed a counterclaim against Plaintiff Sonya Coley, alleging that Coley failed to report employee complaints to the board of directors (Dkt. 71, at ¶ 30), conspired with employees to conceal and exaggerate hours worked (*id.* at ¶¶ 31-32), and endorsed timesheets that were filled out incorrectly (*id.* at ¶ 38). Niles filed a counterclaim alleging that Coley knew about employee complaints and failed to report them to the board of directors. (Dkt. 70, at ¶¶ 15-20.) Both Vannguard and Niles have defaulted and, as a result, the Court now dismisses their counterclaims against Plaintiff Coley. *See Kahan v. Chase Bank*, 10-CV-335 (KAM), 2012 WL 947423 at *1 (E.D.N.Y. Mar. 20, 2012) (granting Defendant's motion for default judgment and dismissing Plaintiff's counterclaims).

## VII.    Damages

The Court previously reserved any damages determination as to Vannguard and the Partnership Corporations pending a liability determination as to Niles.  (Dkt. 220 (granting default judgments, but deferring damages inquest until resolution of liability determination as to Niles).)  The Court has found that Niles is jointly and severally liable with Defendants Vannguard, Local, and the Partnership Corporations for the total amount of damages.

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."  *Rodriguez v. Queens Convenience Deli Corp.*, 09–cv–1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted).  Where, as here, Defendants failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'"  *Id.* (quoting *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).  As Defendants have failed to produce relevant records, the Court may rely on Plaintiffs' recollections regarding their hours and pay in conducting its inquest.  Nevertheless, the Court must ensure that Plaintiffs' approximations and estimates are reasonable and appropriate.  *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 376–77 (E.D.N.Y. 2012).

The Court will address each of the different types of damages claimed by Plaintiffs—*i.e.*, vacation pay, overtime, underpaid wages, and unpaid wages—along with liquidated and statutory damages.

### A.    Vacation Pay

Under the NYLL, Plaintiffs seek earned vacation pay, at their regular hourly rate, claiming that Vannguard's Personnel Policies and Procedures entitled them to vacation pay accrued.  (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Request for Damages ("Pls.' Br."), Dkt.

296, at 15.) Plaintiffs assert that each Plaintiff is entitled to the following hours of vacation pay: Ms. Coley, 710 hours; Ms. Hall, 182.75 hours; Ms. Johnson, 133.50 hours; Mr. Jones, 403 hours; Ms. Richardson, 96.25 hours; Ms. Taylor, 295.55 hours; Ms. Wright, 850 hours; and Mr. Pope, $7,914.43 cash value of earned vacation pay. (*Id.*)

Plaintiffs may recover vacation pay under § 198 of the NYLL, because vacation pay is covered under the definition of "wages." *See* N.Y. Lab. Law §§ 190, 198-c (McKinney's). "An employee's entitlement to receive payment for accrued, unused vacation time upon termination of employment is governed by the terms of the employer's publicized policy." *Tubo v. Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 740 (2d Cir. 2017). The NYLL requires employers to "notify [their] employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours." N.Y. Lab. Law § 195 (McKinney's).

Vannguard's Personnel Policies and Procedures provide that "full-time employees are entitled to vacation pay, which is accrued at the rate of one and one-quarter (1-1/4) days per month. All regular, full-time employees start accruing vacation pay from the date of employment." (Dkt. 100, ¶ 34(c).) The same document also provides that "[e]mployees will receive payment upon resigning for their accrued annual leave." (Personnel Policies and Procedures, Dkt. 278-3, at 15.)

Accordingly, Plaintiffs shall recover unpaid vacation pay at their regular hourly rates, pursuant to the calculations set forth below:

| | Time Period | Wage Rate | Accrued Vacation Hours | Vacation Pay Owed |
|---|---|---|---|---|
| Coley | 11/09/06 - 11/26/12[2] | $28.71 | 710.00 | $20,384.10 |

---

[2] The Court uses 11/26/12 as the end date for Plaintiffs' damages because Vannguard posted a resolution from its Board of Directors giving a "notice of termination" of all employees except two, Kelvin Hicks and Wendy Moffat, and stating that the organization was "closed for business" on that date. (Dkt. 100, at ¶69.) Plaintiffs allege damages up until the time that

| | | | | |
|---|---|---|---|---|
| Hall | 11/09/06 - 11/26/12 | $14.28 | 182.75 | $2,609.67 |
| Johnson | 11/09/06 - 11/26/12 | $21.97 | 133.50 | $2,933.00 |
| Jones | 11/09/06 - 11/26/12 | $17.58 | 403.00 | $7,084.74 |
| Richardson | 11/09/06 - 11/26/12 | $15.10 | 96.25 | $1,453.38[3] |
| Taylor | 11/09/06 - 11/26/12 | $13.36 | 295.55 | $3,948.55 |
| Wright | 11/09/06 - 09/14/12 | $14.16 | 850.00 | $12,036.00 |
| Pope | 11/09/06 – 09/21/12 | $15.30 | N/A | $7,914.43 |
| **Total** | | | | $58,363.87 |

### B.  Overtime

Plaintiffs seek overtime pay for hours worked in excess of 40 hours during a given workweek under both the FLSA and the NYLL.  (Pls.' Br., at 13-14.)  Plaintiffs assert that Ms. Hall, Ms. Richardson, Ms. Taylor, Ms. Wright, and Mr. Pope regularly worked overtime and were not paid accordingly.  (*Id.*)

Under both the FLSA and NYLL, for overtime hours of work, the employer must pay the employee one-and-a-half times the employee's regular rate of compensation.  *Chowdhury v. Hamza Exp. Food Corp.*, 14-CV-150, 2015 WL 5541767, at *5 (E.D.N.Y. Aug. 21, 2015) (citing both FLSA and NYLL overtime provisions), *report and recommendation adopted*, 14-CV-150, 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015).  "Although plaintiffs are entitled to recover unpaid

---

Vannguard closed.  The end date for the purposes of calculating damages should not be confused with the statute of limitations dates, which, as explained *supra*, were determined by the filing of the original complaint on 11/9/12.  (*See* Dkt. 1).

[3] Plaintiffs claim in their motion that the vacation pay amount owed to Richardson is $1,453.37.  The difference is due to rounding.  Other discrepancies are caused by the same reason, if not specifically explained.

. . . overtime pay under both the FLSA and the Labor [L]aw, they may not recover twice." *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Plaintiffs should recover the higher award between the FLSA and NYLL. *Kernes v. Glob. Structures, LLC*, 15-CV-00659, 2016 WL 880199, at *9 (S.D.N.Y. Mar. 1, 2016). Here, the NYLL award for unpaid overtime mirrors that of the FLSA, and the timeframe is fully covered by the limitations periods under both statutes.

"[B]ona fide executive, administrative, or professional" employees are "exempt from the overtime pay provision of the FLSA." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010); 29 U.S.C. § 213. The NYLL "applies the same exemptions as the FLSA." *Id*. Under rules promulgated by the Secretary of Labor pursuant to the FLSA,[4] there are three separate tests for determining whether an employee falls under this exemption: (1) the employee must be "compensated on a salary or fee basis at a rate of not less than $455 per week"; (2) the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; (3) the employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. "[The] employer bears the burden of proving that its employees fall within an exempted category." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

In their Answer to the SAC, Defendants stated that Ms. Hall, Ms. Taylor, Ms. Wright, and Mr. Pope did not qualify for the exemption, but alleged that Ms. Richardson did. (Niles's Answer to Plaintiffs' Second Amended Complaint, Dkt. 70, at ¶¶ 1, 3; VUIA's Answer to Amended

---

[4] The Secretary amended the relevant regulations on May 23, 2016. Because the amendment does not provide retroactive effect, this Court relies on the regulations in effect during the relevant timeframe.

Complaint, Dkt. 71, at ¶¶ 1, 3; *see* SAC, at ¶¶ 76, 91, 104, 115, 124, 135.) As Defendants have failed to support their assertion about Ms. Richardson's primary duties, the Court relies on Plaintiffs' claim that her duties included maintaining records and files, answering telephone calls, providing callers with routine information, and maintaining the Executive Director's appointments, among other duties. (Dkt. 100, at ¶ 117.) These responsibilities do not involve "the exercise of discretion and independent judgment" in "the comparison and the evaluation of possible courses of conduct." 29 C.F.R. § 541.202. Therefore, Ms. Richardson is not exempt from the overtime pay provision of the FLSA.

Accordingly, Plaintiffs shall recover their unpaid overtime wages at one-and-a-half their regular hourly rates, as calculated below:

| | Time Period | Number of Weeks | Overtime Wage Rate | Overtime Hours per Week | Overtime Wages Owed |
|---|---|---|---|---|---|
| Coley | 11/09/06 - 11/26/12 | N/A | N/A | N/A | N/A |
| Hall | 11/09/06 - 11/26/12 | 315 | $21.42 | 3 | $20,241.90 |
| Johnson | 11/09/06 - 11/26/12 | N/A | N/A | N/A | N/A |
| Jones | 11/09/06 - 11/26/12 | N/A | N/A | N/A | N/A |
| Richardson | 11/09/06 - 11/26/12 | 315 | $22.65 | 1 | $7,134.75 |
| Taylor | 11/09/06 - 11/26/12 | 315 | $20.04 | 5 | $31,563.00 |
| Wright | 11/09/06 - 09/14/12 | 305 | $21.24 | 5 | $32,391.00 |
| Pope | 11/09/06 – 09/21/12 | 306 | $22.95 | 10 | $70,277.00 |
| **Total** | | | | | $161,607.65 |

C.    **Underpaid Wages**

Plaintiffs rely on the NYLL to recover underpaid wages resulting from Defendants' occasional partial payments. (Dkt. 100, at ¶ 177.) Plaintiffs claim that Ms. Richardson was continuously underpaid by $28.50 every week from November 9, 2006 to August 10, 2012, and by $251.57 every week from August 13, 2012 to November 26, 2012. (*Id.* at ¶¶ 122, 123.) Plaintiffs further claim that Mr. Jones was continuously underpaid by $115.38 every week from July 1, 2011 to November 26, 2012. (*Id.* at ¶ 110.) Additionally, Plaintiffs claim that Defendants failed to pay Ms. Wright her wages for a roughly one-month period between August 13, 2012 and September 14, 2012. (*Id.* at ¶ 145.)

The NYLL provides "the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing" of an action. N.Y. Lab. Law § 198 (McKinney's). "[C]ourts have awarded straight time rates higher than the minimum wage," where the parties agreed to the rate. *Villar v. Prana Hosp., Inc.*, 14-CV-8211(RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017). The employer is required to "notify his or her employees in writing of any changes to [the rate of pay] at least seven calendar days prior to the time of such changes." N.Y. Lab. Law § 195 (McKinney's).

Defendants failed to pay, and underpaid, Plaintiffs' regular wages on multiple occasions during the relevant timeframe. Even though Vannguard notified Ms. Richardson of an adjustment to her pay on the pay stub that she received for the two-week pay period of November 3-16, 2012, the adjustment only took effect on November 26, 2012, thus not affecting the Court's calculation.

Accordingly, Plaintiffs shall recover underpaid wages for the straight hours they worked at their regular hourly rates, pursuant to the calculation set forth below:

|  | Time Period | Number of Pay Periods | Biweekly Wage | Biweekly Wage Paid | Wages Owed |
|---|---|---|---|---|---|
| Coley | N/A | N/A | N/A | N/A | N/A |
| Hall | N/A | N/A | N/A | N/A | N/A |
| Johnson | N/A | N/A | N/A | N/A | N/A |
| Jones | 07/01/11 - 11/26/12 | 36.5 | $1,230.76 | $1,000.00 | $8,422.74 |
| Richardson | 11/09/06 - 08/10/12 | 150 | $1,057.00 | $1,000.00 | $8,550.00 |
|  | 08/13/12 - 11/26/12 | 7.5 | $1,057.00 | $553.85 | $3,773.63 |
| Taylor | N/A | N/A | N/A | N/A | N/A |
| Wright | 08/13/12 – 09/14/12 | 2.5 | $991.34 | $0 | $2,478.35 |
| Pope | N/A | N/A | N/A | N/A | N/A |
| **Total** |  |  |  |  | $23,224.72 |

### D.    Unpaid Gap-Time Wages

Plaintiffs seek unpaid wages for the straight hours they worked in excess of 35 hours in a given workweek at their regular hourly rates under the NYLL. (Pls.' Br., at 6.) Plaintiffs assert that Ms. Hall, Mr. Jones, Ms. Richardson, Ms. Taylor, Ms. Wright, and Mr. Pope regularly worked over thirty-five hours every week and were not compensated for those hours. (*Id.* at 11.)

"A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). A gap-time claim is consistent with the language of NYLL § 663(1).[5] *Id.* NYLL § 663(1) provides that "[i]f any employee is paid by his

---

[5] The FLSA requires payment of minimum wages and overtime wages only and does not provide a cause of action for unpaid gap time. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments." The Court, therefore, addresses Plaintiffs' gap-time claim under the NYLL.

In calculating the amount owed for a gap-time claim, courts have used both the minimum wage and an employee's regularly hourly rate. For example, the district court in *McGlone v. Contract Callers Inc.*, 114 F. Supp. 3d 172, 173 (S.D.N.Y. 2015) held that the wage to which a plaintiff is entitled under NYLL § 663 is the minimum wage because that provision references Article 19 of the NYLL, which is the Minimum Wage Act.[6] However, the same court, in *Soto v. Armstrong Realty Mgmt. Corp.*, relied on NYLL § 198(3) and used the employee's regular hourly rate, instead of the minimum wage, to calculate gap-time wages. *Soto*, 15-CV-9283(AJN)(JCF), 2016 WL 7396687, at *2 (S.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 15-CV-9283(AJN)(JCF), 2017 WL 2191625 (S.D.N.Y. May 17, 2017); *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812(RER), 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) ("This unpaid compensation should be calculated at Plaintiffs' regular rate.").

The Court chooses to apply Plaintiffs' regular hourly rates to calculate the amount of unpaid wages they are due under their gap-time claims. *See Hernandez*, 2015 WL 1966355, at *42 (applying plaintiffs' regular rate). The Court finds that this construction gives fuller effect to the remedial purposes of NYLL. NYLL § 198(1)-(a) expressly provides that "any employee paid *less than the wage to which he or she is entitled under the provisions of this article*" is entitled to recover his or her "full wages" (emphasis added), and NYLL § 663 does not prohibit an award based on an employee's agreed-upon wages. This means that an employee has a cause of action

---

[6] Under Article 19—the Minimum Wage Act—"[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" the minimum wage. N.Y. Lab. Law § 652.

to recover the full amount of unpaid wages that he or she is entitled to under NYLL § 198, in addition to seeking payment of minimum wages under NYLL § 663. If, in response to a gap-time claim, the Court were to only award compensation at the minimum wage rate, the employer would be paying the employee less than what the employer should have paid the employee for his or her work, and the employee would recover less than what he or she had agreed to work for. Thus, the Court finds that where the employer has agreed to pay the employee a certain wage, that wage should be applied to any gap-time claim filed by the employee.

Accordingly, Plaintiffs shall recover their unpaid wages, pursuant to their gap-time claim, for the straight hours they worked at the regular hourly rate, as calculated below:

|  | Time Period | Number of Weeks | Wage Rate | Total Hours | Gap-Time Hours | Gap-Time Wages Owed |
|---|---|---|---|---|---|---|
| Coley | 11/09/06 - 11/26/12 | N/A | N/A | N/A | N/A | N/A |
| Hall | 11/09/06 - 11/26/12 | 315 | $14.28 | 43 | 5 | $22,491.00 |
| Johnson | 11/09/06 - 11/26/12 | N/A | N/A | N/A | N/A | N/A |
| Jones | 11/09/06 - 11/26/12 | 315 | $17.58 | 40 | 5 | $27,688.50 |
| Richardson | 11/09/06 - 11/26/12 | 315 | $15.10 | 41 | 5 | $23,782.50 |
| Taylor | 11/09/06 - 11/26/12 | 315 | $13.36 | 45 | 5 | $21,042.00 |
| Wright | 11/09/06 - 09/14/12 | 305 | $14.16 | 45 | 5 | $21,594.00 |
| Pope | 11/09/06 - 09/21/12 | 306 | $15.30 | 50 | 5 | $23,409.00 |
| **Total** | | | | | | $140,007.00 |

### E.  **Total Damages for Wages and Vacation Pay**

The total damages that Plaintiffs shall recover for unpaid vacation pay and wages are as follows:

|  | Vacation Pay Owed | Overtime Wages Owed | Wages Owed | Gap-Time Wages Owed | Individual Total |
|---|---|---|---|---|---|
| Coley | $20,384.10 | N/A | N/A | N/A | $20,384.10 |
| Hall | $2,609.67 | $20,241.90 | N/A | $22,491.00 | $45,342.57 |
| Johnson | $2,933.00 | N/A | N/A | N/A | $2,933.00 |
| Jones | $7,084.74 | N/A | $8,422.74 | $27,688.50 | $43,195.98 |
| Richardson | $1,453.38 | $7,134.75 | $12,323.63 | $23,782.50 | $44,694.26 |
| Taylor | $3,948.55 | $31,563.00 | N/A | $21,042.00 | $56,553.55 |
| Wright | $12,036.00 | $32,391.00 | $2,478.35 | $21,594.00 | $68,499.35 |
| Pope | $7,914.43 | $70,277.00 | N/A | $23,409.00 | $101,600.43 |
| **Total** | $58,363.87 | $161,607.65 | $23,224.72 | $140,007.00 | $383,203.24 |

F.    <u>**Liquidated Damages**</u>

Plaintiffs seek liquidated damages under both the FLSA and NYLL for underpaid wages, unpaid wages, overtime wages, and vacation pay.  (Dkt. 100, at ¶ 177.)

The FLSA and NYLL both allow for liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  The FLSA provides liquidated damages for unpaid minimum wages and unpaid overtime compensation.  29 U.S.C. § 216(b).  The NYLL provides liquidated damages calculated based on "the total amount of the wages found to be due."  N.Y. Lab. Law § 198(1-a).  "Wages means the earnings of an employee for labor or services rendered" and "also includes benefits or wage supplements," which in turn includes "vacation, separation or holiday pay."  N.Y. Lab. Law §§ 190, 198-c (McKinney's).

Employers may only avoid liquidated damages under the FLSA by showing that the FLSA breach was done in good faith, with reasonable grounds for believing that the action was not in violation of the FLSA.  *Sines v. Serv. Corp. Int'l*, 03-CV-5465, 2006 WL 3247663, at *4 (S.D.N.Y. Nov. 8, 2006) (citing 29 U.S.C. § 260).  Similarly, the NYLL requires liquidated damages absent

a showing of good faith. *Luna v. Gon Way Construction Inc.*, 16-CV-1411, 2017 WL 835321, at *14 (E.D.N.Y. Feb. 14, 2017) (citing N.Y. Lab. Law §§ 198(1-a), 663(1)).

Plaintiffs are not entitled to liquidated damages under both the FLSA and NYLL. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60-61 (2d Cir. 2016). Instead, "[c]ourts should award damages under the statute that provides for the greater recovery." *Leon v. Zita Chen*, 16-CV-480, 2017 WL 1184149, at *9 (E.D.N.Y. March 29, 2017) (citation omitted). Liquidated damages under the FLSA are "generally required" to be awarded in an amount equal to the actual damages. *Barfield*, 537 F.3d at 150. On November 24, 2009, the New York legislature passed a bill stating that the amount of liquidated damages a plaintiff could recover under the NYLL, if the employer is found to be willful, was "twenty-five percent of the total wages found to be due". N.Y. Lab. Law § 198(1–a). On April 9, 2011, the New York Legislature changed this percentage to "one-hundred percent".[7]

This Court has found that Defendants acted willfully. *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 12-CV-5565(PKC)(RER), 2016 WL 7217641, at *14 (E.D.N.Y. Dec. 13, 2016). Defendants have not made a showing of good faith under the FLSA or NYLL. Plaintiffs are therefore entitled to liquidated damages under the FLSA for three years prior to the filing of this lawsuit, and liquidated damages under the NYLL for six years prior to filing. Plaintiffs filed their claims on November 9, 2012. (Dkt. 1.) Plaintiffs are entitled to the FLSA

---

[7] The statute was first amended on November 24, 2009, to impose a presumption of liquidated damages without a showing of willfulness and provide an affirmative defense of good faith. STRENGTHENING WAGE AND HOUR PROTECTIONS FOR WORKING PEOPLE, 2009 Sess. Law News of N.Y. Ch. 372 (A. 6963) (McKinney's). The statute was again amended on April 9, 2011, to raise the amount of liquidated damages from 25% to 100% of any underpayment. LABOR LAW--WAGE THEFT PREVENTION ACT, 2010 Sess. Law News of N.Y. Ch. 564 (S. 8380) (McKinney's). The Second Circuit held that both amendments were not retroactive. *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013).

liquidated damages equal to 100% of any underpayment from November 9, 2009 to November 26, 2012. Plaintiffs are entitled to the NYLL liquidated damages equal to 25% of any underpayment from November 9, 2006 to April 8, 2011 and 100% of any underpayment from April 9, 2011, and November 26, 2012. Between November 9, 2009, and November 26, 2012, Plaintiffs are entitled to liquidated damages under both the FLSA and the NYLL, but Plaintiffs shall only recover once.

This Court will address liquidated damages for each claim in turn.

i.      Vacation Pay

The Court has found that Plaintiffs are entitled to receive vacation pay owed to them after their termination from Vannguard in 2012. Plaintiffs are also entitled to NYLL liquidated damages equal to 100% of vacation pay. This calculation is set forth below:

| NYLL Liquidated Damages | Time Period | Wage Rate | Accrued Vacation Hours | NYLL Liquidated Damages for Vacation Pay |
|---|---|---|---|---|
| Coley | 11/09/06 - 11/26/12 | $28.71 | 710.00 | $20,384.10 |
| Hall | 11/09/06 - 11/26/12 | $14.28 | 182.75 | $2,609.67 |
| Johnson | 11/09/06 - 11/26/12 | $21.97 | 133.50 | $2,933.00 |
| Jones | 11/09/06 - 11/26/12 | $17.58 | 403.00 | $7,084.74 |
| Richardson | 11/09/06 - 11/26/12 | $15.10 | 96.25 | $1,453.38 |
| Taylor | 11/09/06 - 11/26/12 | $13.36 | 295.55 | $3,948.55 |
| Wright | 11/09/06 - 09/14/12 | $14.16 | 850 | $12,036.00 |
| Pope | 11/09/06 – 09/21/12 | $15.30 | N/A | $7,914.43 |
| Total | | | | $58,363.87 |

### ii. Overtime

With respect to liquidated damages for Plaintiffs' overtime claims, the Court awards those damages under the statute that allows Plaintiffs the greater recovery. *Leon*, 2017 WL 1184149, at *9. For the period between November 9, 2006, and November 8, 2009, Plaintiffs shall recover the NYLL liquidated damages of 25% of overtime pay owed because the only statute that provides for recovery of liquidated damages before November 9, 2009 is the NYLL, based on its six-year statute of limitations. For the period between November 9, 2009, and April 8, 2011, Plaintiffs shall recover the FLSA liquidated damages of 100% of overtime pay owed.[8] For the period between April 9, 2011, and November 26, 2012, Plaintiffs shall recover the NYLL liquidated damages of 100% of overtime pay owed. The Court awards damages under the NYLL for this last period because Plaintiffs are entitled to recover the largest amount under statute, and the NYLL allows for prejudgment interest on top of the overtime amount. *See infra*, Section G – Prejudgment Interest. The liquidated damages calculation for the overtime pay due to Plaintiffs is set forth below:

| NYLL Liquidated Damages | Time Period | Number of Weeks | Overtime Wage Rate | Overtime Hours | Total Overtime | NYLL Liquidated Damages for Overtime |
|---|---|---|---|---|---|---|
| Coley | 11/09/06 - 11/08/09 | N/A | N/A | N/A | N/A | N/A |
| Hall | 11/09/06 - 11/08/09 | 156 | $21.42 | 3 | $10,024.56 | $2,506.14 |
| Johnson | 11/09/06 - 11/08/09 | N/A | N/A | N/A | N/A | N/A |

---

[8] As Plaintiffs are only entitled to liquidated damages equal to 25% of the overtime compensation for the period between November 9, 2009, and April 8, 2011 under the NYLL, this Court awards liquidated damages under the FLSA.

| | Time Period | Number of Weeks | Overtime Wage Rate | Overtime Hours | | |
|---|---|---|---|---|---|---|
| Jones | 11/09/06 - 11/08/09 | N/A | N/A | N/A | N/A | N/A |
| Richardson | 11/09/06 - 11/08/09 | 156 | $22.65 | 1 | $3,533.40 | $883.35 |
| Taylor | 11/09/06 - 11/08/09 | 156 | $20.04 | 5 | $15,631.20 | $3,907.80 |
| Wright | 11/09/06 - 11/08/09 | 156 | $21.24 | 5 | $16,567.20 | $4,141.80 |
| Pope | 11/09/06 - 11/08/09 | 156 | $22.95 | 10 | $35,802.00 | $8,950.50 |
| **Total** | | | | | | $20,389.59 |

| FLSA Liquidated Damages | Time Period | Number of Weeks | Overtime Wage Rate | Overtime Hours | FLSA Liquidated Damages for Overtime |
|---|---|---|---|---|---|
| Coley | 11/09/09 - 04/08/11 | N/A | N/A | N/A | N/A |
| Hall | 11/09/09 - 04/08/11 | 74 | $21.42 | 3 | $4,755.24 |
| Johnson | 11/09/09 - 04/08/11 | N/A | N/A | N/A | N/A |
| Jones | 11/09/09 - 04/08/11 | N/A | N/A | N/A | N/A |
| Richardson | 11/09/09 - 04/08/11 | 74 | $22.65 | 1 | $1,676.10 |
| Taylor | 11/09/09 - 04/08/11 | 74 | $20.04 | 5 | $7,414.80 |
| Wright | 11/09/09 - 04/08/11 | 74 | $21.24 | 5 | $7,858.80 |
| Pope | 11/09/09 - 04/08/11 | 74 | $22.95 | 10 | $16,983.00 |
| **Total** | | | | | $38,687.94 |

| NYLL Liquidated Damages | Time Period | Number of Weeks | Overtime Wage Rate | Overtime Hours | NYLL Liquidated Damages for Overtime |
|---|---|---|---|---|---|
| Coley | 04/09/11 - 11/26/12 | N/A | N/A | N/A | N/A |

| | | | | | |
|---|---|---|---|---|---|
| Hall | 04/09/11 - 11/26/12 | 85 | $21.42 | 3 | $5,462.10 |
| Johnson | 04/09/11 - 11/26/12 | N/A | N/A | N/A | N/A |
| Jones | 04/09/11 - 11/26/12 | N/A | N/A | N/A | N/A |
| Richardson | 04/09/11 - 11/26/12 | 85 | $22.65 | 1 | $1,925.25 |
| Taylor | 04/09/11 - 11/26/12 | 85 | $20.04 | 5 | $8,517.00 |
| Wright | 04/09/11 - 09/14/12 | 75 | $21.24 | 5 | $7,965.00 |
| Pope | 04/09/11 – 09/21/12 | 76 | $22.95 | 10 | $17,442.00 |
| **Total** | | | | | $41,311.35 |

### iii. Underpaid Wages

Plaintiffs are entitled to recover underpaid wages under the NYLL. For the period between November 9, 2006, and April 8, 2011, Plaintiffs shall recover the NYLL liquidated damages of 25% of underpaid wages. For the period between April 9, 2011, and November 26, 2012, Plaintiffs shall recover the NYLL liquidated damages of 100% of underpaid wages. This calculation is set forth below:

| NYLL Liquidated Damages | Time Period | Number of Pay Periods | Biweekly Wage | Biweekly Wage Paid | NYLL Liquidated Damages for Underpaid Wages |
|---|---|---|---|---|---|
| Coley | N/A | N/A | N/A | N/A | N/A |
| Hall | N/A | N/A | N/A | N/A | N/A |
| Johnson | N/A | N/A | N/A | N/A | N/A |
| Jones | 07/01/11 - 11/26/12 | 36.5 | $1,230.76 | $1,000.00 | $8,422.74 |
| Richardson | 11/09/06 - 04/08/11 | 115 | $1,057.00 | $1,000.00 | $1,638.75 |
| | 04/09/11 – 08/10/12 | 35 | $1,057.00 | $1,000.00 | $1,995.00 |

| | | | | | |
|---|---|---|---|---|---|
| | 08/13/12 - 11/26/12 | 7.5 | $1,057.00 | $553.85 | $3,773.63 |
| Taylor | N/A | N/A | N/A | N/A | N/A |
| Wright | 08/13/12 – 09/14/12 | 2.5 | $991.34 | $0 | $2,478.35 |
| Pope | N/A | N/A | N/A | N/A | N/A |
| Total | | | | | $18,308.47 |

### iv. Unpaid Gap-Time Wages

Plaintiffs are entitled to recover unpaid gap-time wages under the NYLL. For the period between November 9, 2006, and April 8, 2011, Plaintiffs shall recover the NYLL liquidated damages of 25% of underpaid wages. For the period between April 9, 2011, and November 26, 2012, Plaintiffs shall recover the NYLL liquidated damages of 100% of underpaid wages. The calculation of Plaintiffs' unpaid gap-time wages is set forth below:

| NYLL Liquidated Damages | Time Period | Number of Weeks | Wage Rate | Total Hours | Gap-Time Hours | NYLL Liquidated Damages for Gap-Time Wages |
|---|---|---|---|---|---|---|
| Coley | N/A | N/A | N/A | N/A | N/A | N/A |
| Hall | 11/09/06 - 04/08/11 | 230 | $14.28 | 43 | 5 | $4,105.50 |
| | 04/09/11 – 11/26/12 | 85 | $14.28 | 43 | 5 | $6,069.00 |
| Johnson | N/A | N/A | N/A | N/A | N/A | N/A |
| Jones | 11/09/06 - 04/08/11 | 230 | $17.58 | 40 | 5 | $5,054.25 |
| | 04/09/11 – 11/26/12 | 85 | $17.58 | 40 | 5 | $7,471.50 |
| Richardson | 11/09/06 - 04/08/11 | 230 | $15.10 | 41 | 5 | $4,341.25 |
| | 04/09/11 – 11/26/12 | 85 | $15.10 | 41 | 5 | $6,417.50 |
| Taylor | 11/09/06 - 04/08/11 | 230 | $13.36 | 45 | 5 | $3,841.00 |
| | 04/09/11 – 11/26/12 | 85 | $13.36 | 45 | 5 | $5,678.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Wright | 11/09/06 - 04/08/11 | 230 | $14.16 | 45 | 5 | $4,071.00 |
| | 04/09/11 – 09/14/12 | 75 | $14.16 | 45 | 5 | $5,310.00 |
| Pope | 11/09/06 - 04/08/11 | 230 | $15.30 | 50 | 5 | $4,398.75 |
| | 04/09/11 – 09/21/12 | 76 | $15.30 | 50 | 5 | $5,814.00 |
| **Total** | | | | | | $62,571.75 |

v. **Total Liquidated Damages**

The total liquidated damages, excluding liquidated damages for delayed payments, are as follows:

| | NYLL Liquidated Damages for Vacation Pay | NYLL Liquidated Damages for Overtime | NYLL Liquidated Damages for Underpaid Wages | NYLL Liquidated Damages for Gap-Time Wages | FLSA Liquidated Damages for Overtime | Individual Total |
|---|---|---|---|---|---|---|
| Coley | $20,384.10 | N/A | N/A | N/A | N/A | $20,384.10 |
| Hall | $2,609.67 | $7,968.24 | N/A | $10,174.50 | $4,755.24 | $25,507.65 |
| Johnson | $2,933.00 | N/A | N/A | N/A | N/A | $2,933.00 |
| Jones | $7,084.74 | N/A | $8,422.74 | $12,525.75 | N/A | $28,033.23 |
| Richardson | $1,453.38 | $2,808.60 | $7,407.38 | $10,758.75 | $1,676.10 | $24,104.21 |
| Taylor | $3,948.55 | $12,424.80 | N/A | $9,519.00 | $7,414.80 | $33,307.15 |
| Wright | $12,036.00 | $12,106.80 | $2,478.35 | $9,381.00 | $7,858.80 | $43,860.95 |
| Pope | $7,914.43 | $26,392.50 | N/A | $10,212.75 | $16,983.00 | $61,502.68 |
| **Total** | $58,363.87 | $61,700.94 | $18,308.47 | $62,571.75 | $38,687.94 | $239,632.97 |

### G.    **Prejudgment Interest**

Plaintiffs seek prejudgment interest "as allowed under the Fair Labor Standards Act and the New York Labor Law." (Dkt. 100, at ¶ 177.)

"[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA." *Tackie v. Keff Enterprises LLC*, 14-CV-2074(JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014). "As FLSA liquidated damages are considered compensatory in nature and thus serve as a form of pre-judgment interest, an additional award of interest on federal damages would be inappropriate." *Yuquilema v. Manhattan's Hero Corp.*, 13-CV-461(WHP)(JLC), 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 13-CV-461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (quotation marks and citation omitted). "By contrast, because liquidated damages provided for by the NYLL are considered punitive in nature," prejudgment interest is not duplicative of liquidated damages under the NYLL and Plaintiffs may recover prejudgment interest for the portion of compensatory recovery under the NYLL. *Id.*

"Sections 5001 and 5004 of New York's Civil Practice Law and Rules provide for a prejudgment interest rate of nine percent, calculated where such damages were incurred at various times from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Li Ping Fu v. Pop Art Int'l, Inc.*, 10-CV-8562(DLC), 2011 WL 6092309, at *2 (S.D.N.Y. Dec. 7, 2011) (citing N.Y. CPLR §§ 5001(b), 5004). Courts often choose "the median date between the earliest ascertainable date the cause of action existed and the date the action was filed or last date the cause of action existed." *Yuquilema*, 2014 WL 4207106, at *12 (internal citation omitted). "The simple interest award is calculated by multiplying the principal

by the interest rate by the time period-from a singular, midpoint date-up until and including the date judgment is entered." *Id.* (quotation marks and citation omitted).

Here, Plaintiffs may recover prejudgment interest for unpaid wages, underpaid wages, vacation pay, and the portion of overtime pay compensated under the NYLL.[9] Plaintiffs' cause of action existed at the earliest on November 9, 2006 and at the latest on November 26, 2012. For the purpose of calculating Plaintiffs' prejudgment interest for the different claims, the appropriate midpoint date from which the interest is calculated is November 18, 2009. The default judgment was granted on August 5, 2016. Thus, the Court calculates prejudgment interest owed in this case as set forth below:

| | Time Period | Number of Years | Actual Damages | FLSA Liquidated Damages | Prejudgment Interest |
|---|---|---|---|---|---|
| Coley | 11/18/09 - 08/05/16 | 6.71 | $20,384.10 | N/A | $12,309.96 |
| Hall | 11/18/09 - 08/05/16 | 6.71 | $45,342.57 | $4,755.24 | $24,510.69 |
| Johnson | 11/18/09 - 08/05/16 | 6.71 | $2,933.00 | N/A | $1,771.24 |
| Jones | 11/18/09 - 08/05/16 | 6.71 | $43,195.98 | N/A | $26,086.10 |
| Richardson | 11/18/09 - 08/05/16 | 6.71 | $44,694.26 | $1,676.10 | $25,978.67 |
| Taylor | 11/18/09 - 08/05/16 | 6.71 | $56,553.55 | $7,414.80 | $29,674.90 |
| Wright | 11/18/09 - 08/05/16 | 6.71 | $68,499.35 | $7,858.80 | $36,620.83 |
| Pope | 11/18/09 - 08/05/16 | 6.71 | $101,600.43 | $16,983.00 | $51,100.47 |
| **Total** | | | | | $208,052.86 |

---

[9] Courts do not award prejudgment interest on liquidated damages under FLSA, but they do award prejudgment interest on liquidated damages under the NYLL. *See Tackie*, 2014 WL 4626229 at *6 (subtracting the FLSA liquidated damages from the total back pay in determining prejudgment interest); *Yuquilema*, 2014 WL 4207106, at *11-12 (same).

### H.    Liquidated Damages for Delayed Payments

Plaintiffs seek liquidated damages for 50 delayed wage payments between 2010 and 2012 under the prompt payment requirement of the FLSA and the NYLL.

A separate right to liquidated damages exists that "is not conditioned on default at the time suit is begun." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 711 (1945). "[C]ourts have long interpreted the [FLSA] to include a prompt payment requirement." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998). The FLSA requires that minimum wages and overtime wages for the hours worked be paid when they become due. *Id.* at 55-56. Employees whose wages are not timely paid are entitled to statutory damages, despite the fact that the employees received their full wages prior to instituting their lawsuit. *See Humphrey v. RAV Investigative & Sec. Servs. Ltd.*, 12-CV-3581(NRB), 2016 WL 7190073, at *6 (S.D.N.Y. Nov. 29, 2016) (under FLSA, "the remedy for untimely wages is limited to liquidated damages"). Under the FLSA, Plaintiffs are entitled to liquidated damages equal to 100% of the minimum wages for the untimely payments. 29 U.S.C. § 216(b).

"The NYLL does not appear to provide a similar remedy." *Belizaire*, 61 F. Supp. 3d at 360, n.22. Although the NYLL, like the FLSA, requires that covered employees be paid "in accordance with the agreed terms of employment[,]" *id.* at 354; NYLL § 191(1)(c), the NYLL's remedy section, NYLL § 198, seems to be "geared to afford relief for unpaid wages, not for late-paid wages," *Belizaire*, 61 F. Supp. 3d at 360, n.22; *see Hussain v. Pakistan Int'l Airlines Corp.*, 11-CV-932 (ERK) (VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment").

Despite the prompt payment requirement of the FLSA, the Second Circuit has no bright line rule for determining what qualifies as an "unreasonable" amount of time for an employer to delay paying its employees. Courts in this Circuit and elsewhere have held that two weeks is an unreasonable amount of time for an employer to delay a paycheck. *See Belizaire*, 61 F. Supp. 3d at 360, n.21 (finding "bounced checks and other paychecks delayed for more than two weeks to be objectively late within the meaning of the FLSA," where defendant had defaulted and waived any opportunity to explain its conduct); *Martin v. United States*, 117 Fed. Cl. 611, 621 (2014) (holding that "the government's payment to employees two weeks later than the Scheduled Paydays for work performed during the October 2013 budget impasse constituted an FLSA violation").[10] The Court agrees that two weeks is an appropriate standard to use in assessing whether Defendants delayed payments to Plaintiffs, especially give the frequency of delayed payments and the hourly rates involved.

Defendants delayed 50 wage payments between 2010 and 2012. (Pls.' Br. at 12-12; Dkt. 278-15, 16.) The delays ranged from three days to 17 weeks. (Dkt. 278-42.) Of these, 21 payments were delayed in excess of two weeks. Accordingly, applying a two-week standard, Plaintiffs shall recover liquidated damages equal to the minimum wages due to them during the 21

---

[10] Other district courts have held that a FLSA violation can occur when payments are delayed only a few days. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 426 (S.D.N.Y. 2017), *order withdrawn*, No. 17-2490, 2017 WL 7532583 (2d Cir. Dec. 6, 2017) (holding that "forward-dating," or delaying, Plaintiff's paychecks for five days "violates the prompt payment requirements of the FLSA", and allowing Plaintiff to add claim of untimely wage payment to complaint); *Gordon v. Maxim Healthcare Servs., Inc.*, No. CIV.A. 13-7175, 2014 WL 3438007, at *3 (E.D. Pa. July 15, 2014) (finding that "employer who misses payday by a day or two to be subject to liability under the statute").

periods of delayed payments.[11]  Each payment covers two weeks of wages.  The minimum wage

for the relevant time period is $7.15.  N.Y. Lab. Law § 652.  For the periods when the paychecks

were delayed, the gap-time wages and the overtime wages, together with the liquidated damages,

have already been calculated.  Plaintiffs are then entitled to liquidated damages for the 70 hours

they worked for each two-week period at the minimum wage rate.  Plaintiffs shall recover

liquidated damages for 21 delayed payments, as calculated below:

|  | Number of Late Payments | Minimum Wage | Two Weeks' Hours | Liquidated Damages |
| --- | --- | --- | --- | --- |
| Coley | 21 | $7.15 | 70 | $10,510.50 |
| Hall | 21 | $7.15 | 70 | $10,510.50 |
| Johnson | 21 | $7.15 | 70 | $10,510.50 |
| Jones | 21 | $7.15 | 70 | $10,510.50 |
| Richardson | 21 | $7.15 | 70 | $10,510.50 |
| Taylor | 21 | $7.15 | 70 | $10,510.50 |
| Wright | 21 | $7.15 | 70 | $10,510.50 |
| Pope | 21 | $7.15 | 70 | $10,510.50 |
| **Total** |  |  |  | $84,084.00 |

## I.    Wage Theft Prevention Act Damages

The NYLL provides that the employer shall "furnish each employee with a statement with

every payment of wages," listing "the number of regular hours worked, and the number of overtime

hours worked."  N.Y. Lab. Law § 195(3) (McKinney's).  "If any employee is not provided a

statement or statements as required by" § 195(3), "he or she shall recover in a civil action damages

---

[11] Plaintiffs used "the normal cash amount for the identified pay period" in their calculation. (Pls.' Br., at 17 n.9.)  However, as explained above, the liquidated damages should be calculated based on the minimum wage.

of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars."[12]  N.Y. Lab. Law § 198 (McKinney's).

Plaintiffs' wage statements were consistently inaccurate because they were misclassified as exempt from overtime and were not permitted to record overtime.  Defendants violated N.Y. Lab. Law § 195(3) and owe the maximum statutory damages.  This calculation is set forth below:

|  | Time Period | Number of Weeks | Statutory Damages Owed |
|---|---|---|---|
| Coley | 11/09/06 - 11/26/12 | 315 | N/A |
| Hall | 11/09/06 - 11/26/12 | 315 | $2,500.00 |
| Johnson | 11/09/06 - 11/26/12 | 315 | N/A |
| Jones | 11/09/06 - 11/26/12 | 315 | $2,500.00 |
| Richardson | 11/09/06 - 11/26/12 | 315 | $2,500.00 |
| Taylor | 11/09/06 - 11/26/12 | 315 | $2,500.00 |
| Wright | 11/09/06 - 09/14/12 | 305 | $2,500.00 |
| Pope | 11/09/06 - 09/21/12 | 306 | $2,500.00 |
| **Total** | | | $15,000.00 |

### J.    Total Damages

The total damages for which Defendants are liable to Plaintiffs are as follows:

|  | Actual Damages | Liquidated Damages | Prejudgment Interest | Liquidated Damages for Delayed Payments | Statutory Damages | Individual Total |
|---|---|---|---|---|---|---|
| Coley | $20,384.10 | $20,384.10 | $12,309.96 | $10,510.50 | N/A | $63,588.66 |
| Hall | $45,342.57 | $25,507.65 | $24,510.69 | $10,510.50 | $2,500 | $108,371.41 |
| Johnson | $2,933.00 | $2,933.00 | $1,771.24 | $10,510.50 | N/A | $18,147.74 |

---

[12] This provision was amended on February 27, 2015 to provide damages of $250 for each week and a maximum total of $5,000.  The Court relies on the provision in effect during the relevant timeframe.

| | | | | | | |
|---|---|---|---|---|---|---|
| Jones | $43,195.98 | $28,033.23 | $26,086.10 | $10,510.50 | $2,500 | $110,325.81 |
| Richardson | $44,694.26 | $24,104.21 | $25,978.67 | $10,510.50 | $2,500 | $107,787.64 |
| Taylor | $56,553.55 | $33,307.15 | $29,674.90 | $10,510.50 | $2,500 | $132,546.10 |
| Wright | $68,499.35 | $43,860.95 | $36,620.83 | $10,510.50 | $2,500 | $161,991.63 |
| Pope | $101,600.43 | $61,502.68 | $51,100.47 | $10,510.50 | $2,500 | $227,214.08 |
| **Total** | $383,203.24 | $239,632.97 | $208,052.86 | $84,084.00 | $15,000 | $929,973.07 |

## CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' motion for a default judgment against Defendant Niles and dismisses Defendants' counterclaims against Sonya Coley. The Court previously granted Plaintiffs' motion for default judgment against Defendants Vannguard, Local, and the Partnership Corporations. Based, in part, on its prior ruling (Dkt. 220), the Court finds that Plaintiffs are entitled to recover damages under the FLSA and NYLL against Defendants. The Court has consolidated the damages inquest as to Defendants and finds that Plaintiffs are entitled to a total damages amount of $929,973.07, as to which Defendants are jointly and severally liable. Judgment is GRANTED in Plaintiffs' favor, and this matter is hereby terminated.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 29, 2018
        Brooklyn, New York